# GENERAL TERM, 1890,

## TOWN OF BRIGHTON *v.* JAMES M. DOYLE AND OTHERS.

*Mortgage of wife's real estate by deed absolute. Bond for re-conveyance to husband. Future advances. Possession as notice. Betterments. Amendment.*

1. A husband and wife conveyed to R. by warranty deed, premises, of which the wife was the sole owner, to secure an indebtedness from the husband to R., and R. thereupon executed to the husband a bond conditioned to re-convey the premises to him upon payment of the indebtedness. *Held,* that the security would not cover future advances made to the husband alone.

2. The buildings having been insured in the name of R., but really for the benefit of the mortgagee, any insurance money must be applied by R. to the payment of the original indebtedness, and not of such further advances.

3. As a part of the original transaction and to secure the same indebtedness a bill of sale was given of certain personal property in which the wife claimed an interest, which was subsequently sold by R. *Held,* that in the absence of any specific directions the proceeds should be applied by him upon the original indebtedness.

4. Subsequently L., by procurement of the husband, paid R. the amount of his claim, including further advances, and took a conveyance from him of the premises. The husband and wife were still in possession. *Held,* that L. acquired no better title than R. had, and that the rights of the wife were not prejudiced by the fact that she requested him to help them, it not appearing that she knew of the future advances.

5. Still later L. obtained a decree of foreclosure against the husband alone for the entire amount paid by him to R. and this the orator bought in to protect itself. *Held,* that the orator thereby obtained no greater right against the wife than L. had.

6. The buildings upon the premises having become uninhabitable, the orator should be allowed the value of those which it erected with the approval of the wife and for her occupation.

7. And this sum may be allowed the orator in a foreclosure suit.

8. The orator should be allowed to amend its petition to adapt it to the relief to which it is entitled in accordance with these views.

Petition of foreclosure. Heard on the pleadings and a master's report at the September term, 1889, Essex County. Taft, Chancellor, decreed for the orator. The defendants appeal. The opinion states the case.

*D. S. Storrs*, for the orator.

The wife having stood by and seen these various transactions by her husband in reference to this property is estopped to set up an interest in it. *Cady* v. *Owen*, 34 Vt. 598 ˙; *Miller* v. *Bingham*, 29 Vt. 82 ; *Morgan* v. *Ry. Co.*, 96 U. S. 716 ; *Steele* v. *Smelting Co.*, 106 U. S. 447 ; *Continental Nat. Bank* v. *Nat. Bank of Commonwealth*, 50 N. Y. 575 ; *Blair* v. *Wait et al*, 69 N. Y. 113 ; *Bragg* v. *Boston & Worcester R. R. Co.*, 9 Allen 61 ; *Greene* v. *Smith*, 57 Vt. 268.

*Bates & May*, for the defendants.

A wife can only mortgage her real estate in the manner pointed out by statute; and this wife's realty can only be held to the extent she has so mortgaged it. R. L. ss. 1923, 1883, 1904, 1906 ; *Abell* v. *Lathrop*, 47 Vt. 375 ; *Dale* v. *Robinson*, 51 Vt. 20 ; *Rood* v. *Willey*, 58 Vt. 475 ; *Priest* v. *Cone*, 51 Vt. 495 ; Jones Mort. §548.

The possession of the wife was notice to Lang. *Presby* v. *Leitch*, 50 Vt. 239.

There is no estoppel. Big. Est. 443 *et seq.; Drury* v. *Foster*, 2 Wall. 24 ; *Stewart* v. *Babbs*, 22 N. E. Rep. 770 ; *Goodenough* v. *Fellows*, 53 Vt. 102.

The opinion of the court was delivered by

MUNSON, J. This is a petition to foreclose the defend-

ants' equity of redemption in the farm upon which they were living at the date of the petition ; and it appears from the deed referred to in the petition that the farm so occupied consisted of two parcels of land, one containing one hundred and fifty-two acres, and the other thirty acres. No objection is made to a decree as to the thirty acres, and our view of the matter in controversy is such that a further statement concerning this piece is unnecessary.

On the sixth day of March, 1878, the defendant Rhoda A. Doyle, the wife of the defendant James M. Doyle, owned the one hundred and fifty-two acre piece, subject to a valid mortgage held by one Robinson, to whom there was also due from James M. Doyle a balance on account. On the day named the husband and wife gave Robinson a warranty deed of this land, and a bill of sale of certain personal property, as security for both debts, the total amount secured being $1,648.74. On the same day, and as a part of the same transaction, Robinson executed to James M. Doyle a bond for the conveyance of all the property to him upon the payment of this indebtedness.

After this transaction, Robinson continued to make advances to James M. Doyle. Meanwhile the buildings on the place burned, and the personal property above mentioned was sold, and Robinson received both the insurance money and the avails of the sale. It appears that Mrs. Doyle claimed an interest in the personal property, and that it was sold by consent of all concerned ; but it does not appear that there was any understanding as to the indebtedness upon which it should be applied. Robinson made no distinction between the indebtedness of March, 1878, and his subsequent advances, and credited these receipts upon the general account.

The Doyles were dissatisfied with the situation, and had a talk with one Lang about taking up Robinson's claim ; Mrs. Doyle remarking that she was willing to do anything to get out of his hands. The result was that Robinson, Lang and James

M. Doyle met on the fifteenth of March, 1880, to arrange the matter. Robinson then claimed a balance of $652, and Lang paid him that amount, and received from him a deed of the property. Lang took the title as security for the amount advanced, giving James M. Doyle an, agreement to convey to him when the amount was paid. If the application of the insurance money and the amount received from the sale had been restricted to the indebtedness of March, 1878, there would have been due Robinson upon that indebtedness at this time only $39.16.

In March, 1883, Lang brought a foreclosure petition against James M. Doyle, and obtained a decree thereon ; and soon after the equity of redemption expired, the orator, with a view to its own protection, paid Lang the amount of his decree and took a deed of the premises. While the title was so held, the old building in which the Doyles were living, and the shelter provided for the stock, became entirely unfit for use, and a house and barn, reasonably adapted to the requirements of the family and property, were built on the place by the town. When the title was taken, there was an understanding with the Doyles that they could have the premises upon paying the amount advanced to Lang ; and after the house was erected, and the building of a barn decided upon, the selectmen executed to James M. Doyle an agreement to convey to him upon his paying the sum so advanced and the cost of improvements.

There was no change of possession or control in connection with any of these transfers ; and Mrs. Doyle asserted no claim to the premises until the bringing of this petition. She knew in a general way of the transactions relating to the farm, but was not fully advised as to what was done, and was ignorant of her rights in the matter. It is not found that she assented to the making of further advances to her husband upon the security of this property. But the master reports that she was consulted in regard to the buildings, and consented to their erection. This pro-

ceeding is contested by Mrs. Doyle, and by her daughter as an attaching creditor of her interest.

Robinson held the title merely as security for an indebtedness, and if the bond for a re-conveyance had been executed to Mrs. Doyle, the transaction would have presented the ordinary case of a mortgage with the conveyance and defeasance in separate instruments. If no bond for a re-conveyance had been executed by Robinson, the transaction would have differed only in that the defeasance would have rested in parol, and Mrs. Doyle would have been entitled to a re-conveyance upon payment of the debt secured. But a bond for the conveyance of the property having been executed to the husband, and further advances having been made to him by the holder of the title, it is necessary to consider whether Mrs. Doyle has thereby lost the right to redeem the property by paying the amount which her deed was given to secure.

The deed of the husband and wife was effectual to pass the title for any purpose; and if one object of the conveyance was to effect a transfer of the property to the husband, the bond would have been a proper step in that direction, and would ultimately have entitled the husband to the deed instead of the wife. In equity, the husband would then have been, by virtue of the bond, the present owner of whatever there was in the property above the security; and the interest of the wife would have been confined to her homestead right in the equitable estate of her husband. But there is no finding that the purpose of the conveyance extended to this, nor that any of the parties so understood it. On the contrary, the report finds, not only that the deed was given as security, but that Robinson took it instead of a mortgage " to save the expense of foreclosure if the debt was not paid as agreed." This seems wholly to exclude the idea that the deed was intended to accomplish an unconditional transfer of the property to the husband.

The bond executed to Doyle was for the conveyance of the

property to him upon his paying the amount for which Robinson received the title as security. As against Robinson, he could acquire the title only by fulfilling the conditions of the bond. We think he had no greater right as against Mrs. Doyle. He acquired no interest by virtue of the bond that did not depend upon a compliance with its conditions. The bond did not make him the owner of the property subject to the mortgage lien, but secured him a right to become the owner by redemption. We think a right to redeem the property upon Doyle's failure to do so remained in the wife. So Robinson remained liable to Mrs. Doyle for a re-conveyance upon Doyle's failure to make the payment required by the bond.

Knowledge on the part of Mrs. Doyle that further credits were being given to her husband did not make them a charge upon the property. The mortgage continued to be held by Robinson as security only for the original indebtedness. It is evident that the insurance on the buildings was in Robinson's name, and that the loss was paid directly to him. In collecting the insurance money he received it upon the indebtedness for which the property was mortgaged, and it should have been so applied. Nothing appears to authorize his application of the avails of the sale of personal property upon any other indebtedness than that for which the property sold was holden. Under the circumstances, no express directions were needed to confine the application of these sums to the mortgage debt. When the payments are thus applied, the secured indebtedness, at the time of the transfer to Lang, is found to have been only $39.16. But Lang paid Robinson $652, and to determine the status of the excess it is necessary to consider the circumstances under which he made the payment.

The record would disclose to Lang that the property conveyed to Robinson had belonged to Mrs. Doyle. If he knew this, he would know that the property was still in the possession of the one from whom the title came. So he must be treated as

having known that Robinson's title was derived from Mrs. Doyle, and as chargeable, by reason of her continued possession, with such information as would have been obtained by inquiring of her. On such inquiry he would have learned that the deed to Robinson was given merely as security, that a part of the indebtedness had been satisfied by an application of the avails of portions of the mortgaged property, and that upon paying the balance she would be entitled to a re-conveyance. The bond contained nothing that could excuse Lang from applying for and acting upon this information.

Nor do we think the conversation Lang had with Mrs. Doyle, before his meeting with Robinson and Doyle, was such as to excuse him from making further inquiry of her in connection with the transaction. It is true that she then expressed an anxiety to have Lang take up the claim, and said she was willing to do anything to get out of Robinson's hands. But there is nothing to indicate that she had any definite knowledge of the condition of affairs between Robinson and her husband, nor that the conversation was such as to lead Lang to suppose that she had. Under these circumstances it is not necessary to treat this remark as an effectual waiver of her rights, or as giving her husband authority to effect a settlement with Robinson by including in the accounting debts for which the property was not holden.

When Lang met with Robinson and Doyle, he knew from the account presented by Robinson that a considerable part of it had accrued since the giving of the security; and there was nothing in the bond held by Doyle to lead him to suppose that Robinson took the title as security for future advances. He was chargeable with knowledge that Mrs. Doyle was the owner of the property, subject only to such incumbrance as she had placed upon it. The security could not be extended without her consent ; and when charges were presented in addition to the original indebtedness, it was Lang's duty to inquire of her before paying

them. In taking his deed from Robinson he obtained security for only such part of his investment as went to take up the unpaid balance of the indebtedness of March, 1878.

The decree obtained by Lang, and purchased by the orator, having been against James M. Doyle alone, the title received by the orator is, as against Mrs. Doyle, the same as that held by Lang.

This leaves for consideration the claim of the orator growing out of the improvements made upon the farm. The buildings were erected in good faith, and with the knowledge and assent of Mrs. Doyle, and were necessary to her continued occupancy of the premises as a homestead. The town took the title, and held and improved the premises, in the expectation that the family would have whatever there was in the property above the amount of the decree and the cost of improvements. It is true the town understood that in the event of a conveyance the title should go to the husband, and that in entering into an agreement to convey upon receiving payment it dealt only with him; but it asked for and acted in accordance with the expressed wish of the wife as well as that of the husband in making the improvements. Everything was done in this particular that makes for the protection of the town that would have been done if the state of the title had been correctly understood.

The orator, believing itself to have derived an absolute title from Mrs. Doyle, but having in fact only a mortgagee's interest after condition broken, suffered the grantor of its title, its mortgagor in fact, to remain in possession of the property and enjoy the rents and profits. During this continued occupancy of the mortgagor, the orator came upon the premises, with the approval of the mortagor, and erected the buildings. The town's right to compensation for these improvements, in a suit proper for the allowance of a claim of that character, must be at least equal to the right of a mortgagee in possession. It is evident that if Mrs. Doyle were out of possession and seeking to redeem, she

would not be allowed to do so without accounting to the town for the value of the improvements. Shall she be allowed to redeem on the orator's petition without doing the same ?

The rule that "he who seeks equity must do equity" is ordinarily applied against a party plaintiff. The books would seem at first view to require that its application be thus restricted. But Mr. Pomeroy, in discussing this subject in his work on Equity Jurisprudence, usually employs the word "actor" to indicate the person against whom the rule may be invoked ; and this term may have been chosen as sufficiently broad to include one who relies upon the protection of an equitable doctrine, although in name a defendant. Indeed, it is plain from section 85 of this work that the author considers that one who stands in the position of a defendant may sometimes be within the scope of the word.

The mortgagor's interest after condition broken is a right to redeem. This right, unless by statutory provision, is recognized only in equity. The mortgagee may take possession by virtue of his legal title, and the mortgagor will then be entitled to redeem at his pleasure. But the mortgagee may, by the process of forcelosure, compel the mortgagor to exercise his right to redeem within a reasonable time. The mortgagee is then the moving party; but he moves for the purpose of forcing the mortgagor to assert his equitable right or abandon it. The mortgagor, although party defendant, is the one who requires the protection of equity. We think he should not be permitted to avail himself of his equitable title in foreclosure proceedings without doing that equity which would be required of him as plaintiff in a suit for redemption. As regards his original obligations the amount required of him would be the same in one case as in the other. We see no reason why the value of permanent improvements should be equitably accounted for in one case and inequitably retained in the other. The one whose expenditures for improvements are at stake will ordinarily be in possession of the

premises, and the party defendant in a bill to redeem. But it would be strange if a party out of possession, who had erected buildings under the peculiar circumstances of this case, could not proceed in equity to foreclose the party benefited without abandoning a perfectly equitable claim for improvements.

Following these views, Mrs. Doyle will not be permitted to· retain the improved property by paying the amount of the mortgage debt, but must allow the orator in addition the sum of $500, which the master reports as the enhanced value of her estate. As the lot from which the lumber for the barn was taken is left out of the accounting, we do not deduct the value of the lumber from the above sum. For the purpose of determining the interest this sum is apportioned to the actual cost of the respective buildings.

The substance of the bill is such as to show that the orator is entitled to relief in accordance with the holding of this opin_ ion, and leave should be given the orator to so amend the statements and prayer of its bill as to make them applicable to the defendant Rhoda A. in the view indicated.

*Decree reversed and cause remanded with mandate.*

Munson, J., doubts as to the effect that should be given to the bond.