## W. E. THORP ET AL. *v.* CHARLES P. CROTO.

May Term, 1906.

Present: ROWELL, C. J., TYLER, WATSON, POWERS, and MILES, JJ.

Opinion filed January 8, 1907.

*Mortgages—Receipt of Insurance Money by Mortgagor Before Mortgage Debt is Due—How Applied.*

Where no portion of the mortgage debt was due at the time a mortgagee received money on a policy of fire insurance procured for his benefit by the mortgagor, he should, in the absence of any direction by the mortgagor, hold the money and apply it to extinguish the mortgage debt, including interest, as fast as the same becomes due; and upon his failure to make that application, the law will make it.

APPEAL IN CHANCERY. Heard on the pleadings and master's report at the December Term, 1905, Lamoille County, *Munson,* Chancellor. Decree for the petitioner. The defendant appealed.

The petition is to foreclose the defendant's equity of redemption in certain real estate upon which the petitioner holds a mortgage securing six notes of $200 each, all dated November 16, 1901, and payable in six, seven, eight, nine, ten, and eleven years from date, respectively, with interest annually. In the month of August, 1903, the barn on the mortgaged premises was destroyed by fire, and the insurance, $247.50, was paid to the petitioner by the insurance company and by him indorsed on the two notes, as stated in the opinion, under date of December 17, 1903. The policy under which this insurance was paid was procured by the mortgagor for the benefit of the mortgagee.

*Brown & Hopkins* for the petitioner.

When fire insurance money is paid to a mortgagee on a policy of insurance payable to him as his interest may appear, the money reduces the principal of the mortgage debt *pro tanto*.    *Town of Brighton* v. *Doyle et al.*, 64 Vt. 621; *Turner* v. *Quincy Ins. Co.*, 109 Mass. 573; *Buffalo Steam Engine Works* v. *Sun Ins. Co.*, 17 N. Y. 406; *Waring* v. *Loder*, 53 N. Y. 581; *Ins. Co.* v. *Marshall*, 48 Kan. 235; 31 Am. & Eng. Enc. 2d ed. 171.

*C. G. Austin & Sons* for the defendant.

In case of loss under a policy of fire insurance made payable to a mortgagee as his interest may appear, the insurance money paid to the mortgagee must be applied on the mortgage debt, if it is due.    If it is not due, such application can not be made without the consent of the mortgagor. Hopkins on Real Property, 198; 1 Jones on Mortgages, §410; *Gordon* v. *Ware Savings Bank*, 115 Mass. 588; *Quarels* v. *Clayton*, (Tenn.) 3 L. R. A. 170; *Early* v. *Flannery*, 47 Vt. 253.

MILES, J., for the majority of the Court.

The question raised in this case is, must the mortgagee receiving money on a fire insurance policy procured by the mortgagor for his benefit, hold that money until some part of the mortgage debt is due and thereafter apply it as fast as it falls due and no faster?

At the time the money was received by the mortgagee no part of the principal nor interest was then due upon the mortgage indebtedness, which then consisted of six promissory notes of two hundred dollars each, bearing date November 16, 1901, and made payable six, seven, eight, nine, ten and

eleven years from date, with interest annually from January 1, 1902. At the time this money was received by the mortgagee, he indorsed it as a payment upon the note first falling due, to the extent of two hundred dollars, thereby extinguishing the principal of that note, if treated as a payment, and leaving due thereon only the interest which had accrued upon it to that date, the first year's interest on all the notes having been paid previous to the receipt of the insurance money by the mortgagee. The balance of the money the mortgagee indorsed generally upon the note next falling due. No direction was given by the defendant mortgagor, to the orator as to what disposition he desired to have made of that money, until some time after the application had been made. His contention now is, that, as no part of the debt was due at the time the money was received, the orator had no right to indorse it upon the debt without his consent until some part of it fell due. It is undoubtedly true that such is the law, and the Court are all agreed that money so received cannot be applied as a payment upon the mortgage debt, if no part is due at the time of application, without the consent of the mortgagor, and a majority of the Court hold that when the debt does fall due, the mortgagee not only may but *must* apply the money to the extinguishment of the debt as fast as the same falls due; that the mortgagee holds such money for the payment of the debt, and the application must be made as the law requires in cases where money is received on a pledge. In *Lewis* v. *Jewett,* 51 Vt. 378, which was a suit upon two notes against the defendant, secured by the pledge of other notes on which was received a sum of money during the pendency of the suit, it was said by the Court, Ross, J. delivering the opinion: "When the sum came into the plaintiff's hands, by

force of the relation in which he held the Mower notes, it was to be used, so far as was necessary to effect that purpose, to extinguish the balance due the plaintiff from the defendant on the notes in suit. The receipt of this sum by the plaintiff effected and operated upon the suit the same as it would if the plaintiff had received the same sum in payment of the balance due him on the notes in suit." In the case of *Hunt* v. *Nevers,* 15 Pick. 500, S. C., 26 Am. Dec., 618, Shaw, C. J., says: "It is a general rule, that where collateral security is received for a debt, with power to convert the security into money, this is specifically applicable to the payment of such debt; the same person being the party to pay and receive, no act is necessary, and the law makes the application; if the proceeds equal or exceed the amount of the debt, it is *de facto* paid; no action would lie for it; and proof of these facts would support the defense of payment." To the same effect is the case of *Prouty* v. *Eaton,* 41 Barb. 409, in which the Court say: "This, as a matter of law, is a payment upon the principal debt. *Prima facie* there is nothing else upon which the money paid could apply." The last named case was one in which the money received was a payment upon a mortgage held as collateral security. Similar cases can be found in other states besides Massachusetts and New York, but no useful purpose could be served in collecting cases upon this point, as the rule for the application of payments received in such cases is well settled and rests upon principle as well as upon authority.

Applying this rule to the case at bar, it follows that the orator had no right to apply the money as he did, but that he should have held it until a part of the mortgage debt fell due, and then should have applied it to the part which had fallen

due, and as it fell due, and upon his failure to make that application, the law will make it.

The master has found that if such application is made, there was nothing due on the mortgage debt at the time the petition was brought and that the petition should be dismissed.

Some question was made on the trial of this cause before the master respecting the defendant's failure to insure the buildings on the mortgaged premises in accordance with the condition of the mortgage, and the master has found that the mortgagor failed in some respects to insure strictly in accordance with that condition; but he also finds that such failure was the result of a misunderstanding on the part of the mortgagor, and his inability to perform the condition in that respect any sooner than he did, after he learned that the insurance had expired and the buildings were not insured as the condition of the mortgage required. He also finds that no damage was occasioned the orator in consequence of this failure, and that after the insurance was effected, the orator has had the possession of that policy and still has it.

In view of the fact that the orator has made in his brief no point of this failure to keep the buildings on the mortgaged premises insured strictly in accordance with the condition of the mortgage, and no damage having resulted from it, we consider it unnecessary to say anything respecting that matter; but pass by it as the orator has done.

*Decree reversed with costs in this Court, and cause remanded with mandate that the bill be dismissed.*

MILES, J., dissents.

As a general rule, dissenting opinions are more harmful than beneficial; for the opinion of the majority is usually correct, and in many instances would settle the law upon a

new question for the first time raised in that case, but for the doubt and suspicion cast upon it by the dissenting opinion.    It is only when the judge cannot conscientiously concur with the majority, and when his dissent, without any reason for it being stated, must appear frivolous and weak to all who do not carefully investigate for themselves, that he is justified in writing a dissenting opinion.    Such is my justification for writing this opinion.

The question stated in the opinion of the majority and restated here is, *must* the mortgagee receiving money on a fire insurance policy procured by the mortgagor for his benefit, hold that money until some part of the mortgage debt is due and thereafter apply it as fast as it falls due and no faster?

It is somewhat remarkable that only a few cases can be found in which a question of so much importance has been considered.    The question of the application of insurance money, as between the mortgagor and mortgagee, in various circumstances, has quite frequently been before the courts; but I am unable to find many in which the exact question raised in the case at bar, has been passed upon or which contain principles closely analogous to the principles involved in the case at bar.    Statements in text books, as well as in numerous cases, can be found strong enough, perhaps, to justify a conclusion that such insurance money *must* be applied to the mortgage debt as fast as the same falls due, if we consider only the language of the statement made or rule laid down, independent of the cases wherein they are made or from which the rule is taken; but, if the investigation goes down into the cases in search of the source of such statements and the foundation upon which they rest, the conclusion must follow, that they do not hold that such insurance money *must* be so applied.

Beginning that investigation with the "Cyc." Vol. 19, p. 885, it is found that the rule laid down by the author of that work is in the following language: "The mortgagee is under obligation to apply the proceeds of insurance taken by the mortgagor for the mortgagee's benefit to the satisfaction or reduction of the mortgage debt."

If this rule is considered in connection with the general subject it will be noticed that the author intended that this rule was subject to limitations, especially those stated in other parts of the work. The rule, if taken strictly literal, would require the mortgagee to make the application as soon as the money was received, whether the debt was or was not then due, and whether the mortgagor did or did not consent to such application; but this the author did not intend, for in another part of his work he lays it down as settled law, that the mortgagee cannot make such application without the consent of the mortgagor, and this last statement has the sanction of all the authorities, in cases free from agreements and modifying provisions upon that subject. Hopkins on Real Property, p. 198; *Gordon* v. *Ware Sav. Bank,* 115 Mass. 588; *Fergus* v. *Wilmarth,* 117 Ill. 542 (7 N. E. 508); *Naquin* v. *Tex. Sav. & R. E. Invest. Association,* 58 L. R. A. 711.

To know the value of any rule or statement of law it is necessary, to know whence it sprang and upon what it rests, so I have attempted to trace out to some extent the source from which some of these statements and rules have been taken.

The foregoing rule or statement from the "Cyc.," rests upon the following authorities cited in the note: *Home Ins. Co.* v. *Marshall,* 48 Kan. 235, (29 Pac., 161); *Concord Mut. Fire Ins. Co.* v. *Woodbury,* 45 Me. 447; *Sterling Fire Ins. Co.*

v. *Beffrey,* 48 Minn. 9, (50 N. W. 922) ; *McDowell* v. *Morath,*
64 Mo. App. 290; *Smith* v. *Packard,* 19 N. H. 575; 28 Cent.
Dig. sec. 1447.

An examination of the foregoing cases shows that the
questions and facts involved are not similar to the question
and facts involved in the case at bar.

In *Home Ins. Co.* v. *Marshall, supra,* the question of ap-
plication arose upon a suit by the insurance company against
the mortgagor to recover the full amount of the mortgage
debt, the insurance company having paid the mortgagee the
full amount and taken an assignment from him after the build-
ings were destroyed by fire; in which suit the company sought
to deprive the mortgagor of all benefit of the insurance which
had been effected and maintained at his own expense.   What
is said in that case about the application of insurance money,
is said with reference to its application by the mortgagee when
called upon to account for it in a case in which he is liable to
account.   The only question here was whether he was liable
to account.   If he was liable to account, there was no question
but that it should be accounted for in that case in reduction
of the mortgage debt.

In *Concord Mut. Fire Ins. Co.* v. *Woodbury, supra,* the
*mortgagee* effected the insurance, and upon payment of his
mortgage by the insurance company after the property was
destroyed by fire assigned the mortgage and debt to them.
Afterwards they brought suit against the mortgagor for the
possession of the mortgaged premises, and it was held that
the action could be maintained.   What is said about the
application of insurance money is not called for by any ques-
tion raised in the case, and is based on *King* v. *State Mut.
Fire Ins. Co.,* 7 Cush. 1.   This case simply holds that a mort-

gagee may recover for his own use on an insurance policy obtained by *himself at his own expense.* Judge Shaw in his opinion, however, discusses the rights of the mortgagor where he effects the insurance for the benefit of the mortgagee, but that question is not raised in the case and the judge cites no authorities to support his opinion in this respect. What he said in this respect is mere *obiter dicta,* and, if what he said is to be construed as holding that the mortgagee must apply the insurance money as fast as the mortgage debt falls due, then he did not state the law as it is now understood in Massachusetts.

*Sterling Fire Ins. Co.* v. *Beffrey, supra,* was a foreclosure proceeding by the insurance company, to whom the mortgage had been assigned by the mortgagee, under a stipulation in the policy that he should do so upon payment to him of the amount due on his debt. The assignment was made after the buildings were destroyed by fire. The Court held, that, under the terms of this mortgage and the policy and in the circumstances of that case, the mortgagor could not compel the application of the insurance money. All that there is in the case to support the statement in the "Cyc." is what is said outside of the question raised and determined.

In *McDowell* v. *Morath, supra,* the case showed, that the plaintiff gave the defendant a writing, in legal effect held to be a mortgage, securing a loan upon real property, conditioned to keep the buildings upon said real estate insured for the benefit of the defendant. Upon the expiration of the policy which the plaintiff first took out, and after his failure to reinsure and keep the buildings on the mortgaged premises insured according to contract, the defendant caused them to be insured at the expense of the plaintiff, by a policy limiting the

company's liability to the plaintiff's indebtedness to the defendant. Upon the buildings being burned the defendant settled with the company for the sum due on his debt against the plaintiff. Held that the plaintiff could not recover the balance of the policy above the sum received by the defendant in the settlement as he had settled for as much as either could recover. The decision in that case was controlled by the terms of the policy, and what was said about the application of insurance money was not called for by any question raised in the case.

In *Smith* v. *Packard, supra,* one standing in the place of the mortgagee received on the insurance policy more than enough to pay the mortgage debt and interest. It was held that he was liable for the excess above the sum due on his debt. In this case presumably the debt was due, and being due, the mortgagor, or one standing in his place, had a right to pay the debt and have the mortgage discharged. A part of the mortgaged property then being in cash, it would be useless and therefore unnecessary for the person redeeming the entire property, to redeem that money with other money. This case, in its peculiar circumstances, supports the author's statement; but it does not support the doctrine, as it seems to me, that the mortgagee receiving such money before any part of his debt is due, must hold it, unless the mortgagor consents, and apply it as the debt falls due. The redemption of the mortgaged property by payment of the whole debt when due produces an entirely different result from a redemption after default to pay part of the debt when due, leaving a part not then due and still unpaid. In the former case the mortgagee's title is extinguished, while in the latter it remains unaffected. In the former the mortgagee is compelled to re-

linquish all right by a discharge of his mortgage, while in the latter he cannot be compelled to take a portion of the property either as security or payment. Jones on Mortgages, 2nd ed., sec. 707. In the former case the mortgagee cannot decline to take the insurance money as a payment on the ground that it will impair his security, while in the latter he can.

The next and last citation by the "Cyc." is Vol. 28 Cent. Dig., sec. 1447. That authority cites all the cases cited in the "Cyc.," and in addition it cites under the head of "Application of Proceeds of Insurance to Debt," *Conn. Mut. Life Ins. Co.* v. *Scammon, et al.,* C. C. 4 Fed. 263, and *Ulster County Sav. Inst.* v. *Decker,* 11 Hun. 515. The latter case was overruled by *Same* v. *Leach,* 73 N. Y. App. 161, and requires no further comment.

In the case of *Conn. Mut. Life Ins. Co.* v. *Scammon, supra,* the facts disclosed, that the mortgage was conditioned that the defendant would keep the buildings thereafter erected on the mortgaged premises, insured and would assign and deliver the policy to the plaintiffs, who should hold it as collateral security with the right to collect and apply the money to the restoration of the buildings destroyed. The buildings were burned, the money paid to the plaintiffs and by them handed over to one of the mortgagors to restore the buildings, who failed to do so and who converted the money to his own use. Upon suit being brought to recover the debt, it was held, that as to the other two defendants, the receipt of the insurance money by the plaintiffs must be held to be a payment. Clearly this case does not lay down a rule regulating the general application of insurance money by the mortgagee. It is therein simply held, that not having applied it as pro-

vided in the mortgage, the mortgagees must account for it as a payment.

Hilliard on Real Property, 3rd ed., Vol. 1, p. 260, lays the rule down as follows: "If the debt has not been paid, the money goes to pay it *pro tanto,* and is therefore so applied to the mortgagor's benefit." The only authority cited in support of this statement is *King* v. *State Ins. Co., supra,* already commented upon.

In Jones on Mortgages, 2nd ed., Vol. 1, sec. 409, it is stated: "The mortgagee receives the proceeds to apply in the first place to the payment of the mortgage debt, and then he is trustee for the mortgagor for any balance left in his hands." The author cites in support of this statement, *Fowley* v. *Palmer,* 5 Gray 549. In that case, the only question raised was whether the mortgagee was entitled to an allowance for premiums paid and expense of insurance of the mortgaged property, upon failure of the mortgagor to do so, as stipulated in the condition of the mortgage. It was held that he was entitled to have the same allowed on the accounting in that case, which was a proceeding to redeem. What the learned judge said by way of argument in that case was without consideration of the subject of the application of insurance money received by a mortgagee and no authorities are cited by him in support of what he says and it was not called for by any question raised in the case.

In Washburne on Real Property, 3rd ed. Vol. 2, p. 216, the statement is made as follows: "And when the mortgagee is trustee for the mortgagor in respect to the insurance upon the premises, as where the mortgagor effects the insurance payable to the mortgagee, or the mortgagee effects it at the

26

mortgagor's expense and by his consent, whatever is received by the mortgagee thereon must be accounted for towards the mortgage debt." To this statement the author cites *King* v. *State Ins. Co., supra; Fowley* v. *Palmer, supra; Graves* v. *Hampden Ins. Co.,* 10 Allen, 281, cited as 382.

, No further comment need be made respecting *Fowley* v. *Palmer, supra* and *King* v. *State Ins. Co., supra,* as it has clearly been shown by what has already been said, that neither are authority for holding that the mortgagee *must* hold the money until some part of the debt is due and then apply it as fast as it does fall due.

In *Graves* v. *Hampden Ins. Co., supra,* which was a proceeding to redeem, the only question settled was as to the rights of the purchaser of the equity where the purchase was made after the insured buildings were burned, the owner of the equity, in pursuance of a provision in the mortgage, having taken out a policy upon the buildings on the mortgaged property, at his own expense, payable to the mortgagee, in which it was provided that no sale of the property should affect the rights of the mortgagee, but change in the title should determine the risk, and having sold his equity after the buildings had been burned and the policy being assigned to the insurance company by the mortgagee, upon the company paying to him the sum due on his mortgage, held that the purchaser of the equity might redeem the premises upon paying to the insurance company the balance due upon the mortgage after deducting the sum due on the insurance.

In Hopkins on Real Property on p. 8 the author states as follows on p. 198, viz: "In case of a loss under such a policy, the mortgagee must apply the insurance money to the mortgage debt, if it be due." He bases this statement on the cases

of *Waring* v. *Indemnity Fire Ins. Co.,* 45 N. Y. 606, (Am. Rep. Vol. 6, 146) and *Waring* v. *Loder,* 53 N. Y. 581.

All that is held in *Waring* v. *Indemnity Fire Ins. Co., supra,* is, that the insured may sustain an action against an insurance company for a loss by fire, notwithstanding that he has sold the property and received pay, but still holds the possession of the property, where the policy was issued to insure property "sold but not removed."

In *Waring* v. *Loder, supra,* all that the  Court decided was, that though the mortgage, or a judgment of foreclosure founded thereon, should be actually assigned to the insurer, it would not avail him, except so far as it was unpaid by the insurance.   It is true that the Court say, that such money should be applied to the payment of the mortgage debt, but the statement is general and without limitation and was never intended as the announcement of a general rule to be applied in all cases, where insurance money was received by the mortgagee on a policy effected for his benefit without a contract express or implied as to how it should be applied.   A statement similar to that used in the text books and cases to which attention has been called, can be found in a case in this State, *Brighton* v. *Doyle,* 64 Vt. 616, 25 Atl. 694, in which Judge Munson wrote the opinion wherein he says: "In collecting the insurance money he received it on the indebtedness for which the property was mortgaged, and it should have been so ap-·plied."   This statement separated from the facts in the cases might lead one to the conclusion, that it was made as the declaration of a general principle governing the application of insurance money received by a mortgagee, where no contract for its application existed between the mortgagor and mortgagee.   The most casual examination of the case shows

that it was not so made. No question was raised but that it was received as a payment with the consent of both parties, but the real issue made was whether it could be applied to any other than the mortgage debt, and the Court in the language above, held that it could not.

A few other minor cases of a similar nature, I have no doubt, can be found, in which the Court have said in a general way, that such insurance money must be applied to the mortgage debt. As has already been shown, and as I believe might be shown in any case which may exist and to which attention has not been called, the general statement, that such insurance money should be applied to the mortgage debt, has been made by way of argument or as called forth by the peculiar circumstances and facts of the case in which they were made; and were not made by the Court in any of them as the statement of a general rule governing the application of insurance money received by the mortgagee, where no contract for its application existed.

In certain circumstances the mortgagee does receive it to apply on the mortgage indebtedness; as where the debt is wholly due and the insurance money is enough to pay it, or as where the mortgagor tenders to the mortgagee a sum which with the insurance money is sufficient to pay the mortgage debt; or as where the money is received by a mortgagee having a debt against the mortgagor other than the mortgage debt, as a payment with the consent of the mortgagor, without direction as to its application, or as it is received in other circumstances of a similar character, unnecessary to enumerate here; but does he ever receive it before the debt is due, to hold and apply it as it falls due and no faster, where no agreement to that effect exists, is the question.

In answering this last question upon principle, the rule, that the mortgagee cannot apply the insurance money to the payment of the mortgage debt, without the consent of the mortgagor, and that the insurance is not effected for the purpose of paying the debt, firmly established by repeated decisions of eminent courts, sheds much light upon the solution of that question. The reason why the mortgagee cannot apply it without the consent of the mortgagor, is because it is not a payment and never was intended to be such by the parties to the mortgage, and the mortgagee's right to its rests upon the mortgage agreement. The money takes the place of the mortgaged property destroyed. *Powers* v. *Ins. Co.*, 69 Vt. 494, 38 Atl. 148; *Gordon* v. *Ware Sav. 'Bank*, 115 Mass. 591; *Naquin* v. *Texas Sav. & R. E. Invest. Association*, 58 L. R. A. 711; *Williams* v. *Lilley*, 67 Conn. 50, (37 L. R. A. 150.) Like the mortgaged property which it represents, it may be converted by the mortgagee, if he sees fit so to do, upon breach of the condition of the mortgage; but he cannot be compelled to convert it, and if he does not do so, its character remains as mortgage security, and from that it cannot be changed to the injury of the mortgagee by the mortgagor's neglect to perform the condition of his mortgage contract; for it would be inequitable to permit him to profit by his own wrong.

In considering the rights of mortgagor and mortgagee to the insurance money received on a policy effected by the mortgagor for the benefit of the mortgagee under a condition in the mortgage that he should do so, where such money is received before any part of the debt is due, a distinction is to be carefully observed between their rights to money so received and money received upon a policy assigned to the mortgagee by the mortgagor, covering other property than the mort-

gaged property and assigned to him as independent security. In the former case the insurance policy adds nothing to the security and it becomes valuable only when the mortgaged property which it covers, ceases to exist in whole or in part; while in the latter case the policy represents a value independent of any other security, and in law it is a pledge. In the former case, the money is held under a contract of mortgage, as we have seen. In the latter case the money is held under the contract of pledge. Our own Court has settled the character of money received under a policy issued upon the mortgaged property on the application of the mortgagor, for the benefit of the mortgagee, in *Bank* v. *Bedell et al.,* 74 Vt. 108, 52 Atl. 270, in which Judge Start, delivering the opinion for the Court, says: "The mortgagee did not hold the property as a pledge or as collateral security," and then further along he says: "The petitioner's custody of the policy did not add anything to its security." Again in *Powers* v. *Ins. Co.,* 69 Vt. 494, 38 Atl. 148, Taft, C. J., says: "The effect of the provision is to give a mortgagee a lien upon the insurance money in case of loss, securing him by substituting the proceeds of the policy in place of the property." The principle upon which money received by a mortgagee on a policy of insurance effected by the mortgagor for the benefit of the mortgagee is similar to the principle upon which the mortgagee receives money assessed as land damages for laying a highway across the mortgaged premises. Taft, C. J., delivering the opinion in *Brooks et al* v. *Hubbard et al.,* 73 Vt. 122, 50 Atl. 802, says: "The mortgagee would hold the damages as security for the mortgage debt in the same manner that it held the land."

Holding money received on an insurance policy in place of the mortgaged property destroyed, is the exercise of a right

by the mortgagee derived from the terms of the mortgage, and his right to that money in no way differs from the right which he had in the property which that money represents, except that, being changed to personal property, possession, in some cases, is necessary in order to protect his right as against third parties; but when a breach of the condition of the mortgage happens, in law, he becomes the absolute owner of the undestroyed part of the mortgaged property and also of the money which represents the part destroyed. He becomes such owner not because the money and property are received as a payment, but because by the terms of the mortgage contract he is to become such, on failure of the mortgagor to pay the mortgage debt when due. The parties, no doubt, can agree that the money so received may be applied as a payment, as is usually done, either by express or implied agreement, and when it is so applied, it operates like any payment, to extinguish the debt to the extent of the money received. Usually the application of the insurance money can be made when received with benefit to both parties, as where the remaining security is ample and where the mortgagor does not desire to use the money to restore the property destroyed; but where the remaining security is not ample or where the mortgagor desires to use the money to rebuild, great injustice may be done either to the mortgagor or mortgagee by applying the insurance money to the mortgage debt as fast as it falls due. In such a case where the debt equals the value of the morgaged property, and, to accommodate the mortgagor, the debt is strung out in small annual payments, the first falling due several years after the debt is created, as in the case at bar, and where the insurance money represents a considerable part of the security, such application is grossly in-

equitable to the mortgagee, as much so as if the mortgagor, whose property had been mortgaged for its full value, had cut the standing timber on the mortgaged premises and sold the same to pay the accruing interest. In either case, the mortgagor would retain the possession and use of the mortgaged property, without paying anything from his own funds, by converting a part of the mortgaged property to his own use; and when the money so received and procured had been exhausted, the mortgagee would have his principal debt outstanding, secured only by a remnant of the original mortgaged property. To carry the illustration to a point where the principal part of the security can be wiped out by the application of the insurance money to the payment of the interest, we have only to suppose a case where the security consists almost wholly of the insured property, and the mortgage debt consists of a series of notes made payable a long time in the future, none of them falling due for years. The accruing interest may consume the money received before any part of the notes falls due. This may be a strong presumption and the case supposed one that is rarely, if ever liable to occur, but the principle is the same as in a less extreme case. The only difference lies in the extent of the wrong done. The extreme case, however, serves to bring out more clearly the inequitable result which in some cases would follow the doctrine that the insurance money must be applied by the mortgagee as fast as the debt fell due. It was argued, that to thus apply insurance money, does not impair the security; but the contention cannot be sustained; for the right to enforce a debt enters into all securities and forms a part of them, and this is observable in the case at bar.

If the orator in the case at bar must apply the insurance money to the interest which is now due, then there is no breach of the mortgage and his foreclosure must fail, and the mortgagor may continue in the possession of the premises until that money is exhausted, hence he cannot enforce his debt against the security until that event happens; whereas, if the money remained security in place of the property burned, then there would be a breach of the condition of the mortgage and the orator would have the right to the possession of the remaining original security as well as the possession of the money.

On the part of the mortgagor, cases might arise in which the rule, that the mortgagee must hold the money until some part of the debt falls due and then apply it as fast as it thereafter becomes due, would be followed by results as serious to the mortgagor as in other cases it was to the mortgagee. His entire property might be embraced in the property burned and the use of the insurance money might be necessary to restore it, and his ability to continue in business might depend upon its restoration. The doctrine then, that the morgagee must hold the insurance money until some part of the debt falls due and then apply it as fast as it does fall due, will operate, in some cases, unjustly to the mortgagee, and in others unjustly to the mortgagor.

Equity requires that justice should be done in all cases, if possible. Adopting the rule laid down in *Powers* v. *Ins. Co., supra; Sav. Bank* v. *Bedell et al., supra; Gordon* v. *Ware Sav. Bank,* 115 Mass. 591; *Naquin* v. *Texas Sav. & R. E. Invest. Association, supra; Fergus* v. *Wilmarth,* 117 Ill., 547 and *Williams* v. *Lilley, supra,* which is that the insurance money received by the morgagee takes the place of the mort-

gaged property, equal justice would be done to both parties in all circumstances. The mortgagee would receive it, if the debt was due and unpaid, as he would receive the mortgaged property which it represented, to reasonably account for its use, and if no part of the debt was due he would hold it in the same manner, unless he or the mortgagor saw fit to use it for the restoration of the property burned. Such an application is sanctioned in *Fergus* v. *Wilmarth, supra*. In that case the insurance money was received before any part of the debt fell due and was placed in bank to await a proper application. The creditor demanded the payment of the money upon his debt which was not due. The mortgagor insisted upon building another house upon the ground. The bank refused to turn it over to the mortgagor, but agreed to pay it to him whenever he should complete the building, so that sufficient insurance could be had upon it to indemnify the mortgagee as fully as he was indemnified before the fire. It was held by the Supreme Court of Illinois that the money was properly set apart for a legitimate purpose by which the rights of both parties were equally protected.

In *Gordon* v. *Ware Sav. Bank, supra*, a case cited and approved of in *Fergus* v. *Wilmarth, supra*, the Court held that the mortgagee could appropriate the money to the restoration of the property destroyed and in connection therewith used the following language: "The insurance was for indemnity to the mortgagor as well as to the mortgagee. To the mortgagee it was protection of the security, not for payment of the debt. It was collateral to the debt. Money received from insurance took the place of the property destroyed, and was still collateral until applied in payment by mutual consent, or by some exercise by the mortgagee of the right to demand payment of the debt and upon default of payment to convert the securities."

In *Naquin* v. *Tex. Sav. & R. E. Invest. Association, supra,* in which *Gordon* v. *Ware Sav. Bank, supra,* is cited approvingly, the Court held, that the conditional vendor could apply insurance money, received upon a policy effected by the conditional vendee for his benefit, to the restoration of the property destroyed and in connection therewith the Court says: "The debt not being due, the money collected upon the insurance policy could not be applied to its liquidation, except by the consent of the creditor and the debtor. The debtor had no more right to demand the application of the money to the satisfaction of those instalments which had not fallen due, without the consent of the payee of the obligation, than the payee had to apply it to the satisfaction of the unmatured indebtedness against the wishes of the mortgagor. The rights of the parties were reciprocal under the contract. In this situation, the purpose of the parties, in creating the insurance out of which this fund arose, was attained by a restoration of the house, thereby placing them in the same situation they were in before the fire."

The three cases last above cited show, that the ground of the Court in holding that the mortgagor or mortgagee has the reciprocal right to apply insurance money, received on a policy effected by the mortgagor for the benefit of the mortgagee, rests upon the doctrine that such insurance money takes the place of the property destroyed.

If we admit that insurance money, received by the mortgagee, before any breach of the mortgage, under a policy effected by the mortgagor, for the benefit of the mortgagee, represents the mortgaged property, the conclusion, that the mortgagor or mortgagee may use it to restore the original value of the mortgaged property, is irresistible; for, if no part of the debt

is due, the mortgagor has a right to the use and possession of the mortgaged property, if the mortgage contains no provision to the contrary, so long as he uses it in a manner which in no way endangers or impairs the mortgage security and the mortgagee under similar conditions, has the same right to restore the buildings, because, as is said in *Naquin* v. *Tex. Sav. & R. E. Invest. Association, supra,* "The purpose of the parties in creating the insurance, out of which this fund arose, was attained by a restoration of the house."

As it seems to me, not only in principle but upon authority, insurance money received in the manner just described represents the property destroyed. This Court in express language has so held, in *Powers* v. *Ins. Co., supra,* wherein Taft, C. J., says: "The effect of the provision is to give a mortgagee a lien upon the insurance money in case of loss, securing him by substituting the proceeds of the policy in place of the property."

This Court in *Brooks et al.* v. *Hubbard et al., supra,* have held in express language, that the mortgagee receives damages for land taken for highway purposes in place of the land. The language used by Taft, C. J., is as follows: "The mortgagee would hold the damages as security for the mortgage debt in the same manner that it held the land."

In *Sav. Bank* v. *Bedell et al., supra,* the Court by Judge Start substantially holds the same. It says: "The mortgagee did not hold the policy as a pledge or as collateral security." If not held as a pledge or collateral security, it must have been held as a mortgage and the Court in this case evidently intended to follow its preceding holdings.

Outside of this State, I have already called attention to *Fergus* v. *Wilmarth, supra; Gordon* v. *Ware Sav. Bank, supra,*

and *Naquin* v. *Tex. Sav. & R. E. Invest. Association,* *supra,* which hold that the insurance money represents the property destroyed. The case of *Williams* v. *Lilley.* *supra,* holds the same in the following language: "What would be the rights of the parties in such a case? The money was derived from an insurance of the defendant's interest in the property. It belonged to him. But so did the property insured. Indeed the money itself was theirs, because it represented in another form,—stood for, and took the place of,—what had been theirs; what so far as it remained, continued to be theirs."

Jones on Mortgages 2nd ed., Vol. 1, sec. 410, practically holds the same and Wood on Fire Insurance, sec. 110, p. 236, substantially supports the same. It must be upon this principle that it is said, in Jones on Mortgages, 6th ed. Vol. 1, §409: "If the holder of the mortgage receive the insurance money after the mortgage debt is due, and afterwards, without endorsing the amount received upon the mortgage note, assigns the note and mortgage, the mortgagor cannot maintain a bill to have this amount endorsed upon the note. His remedy is to redeem."

Upon a careful search, I am unable to find any authorities holding the contrary; hence it seems to me that upon principle and authority such money represents the property destroyed by fire and is held under the mortgage as a part of the mortgaged property, and being so held it does not change its character by instalments, as the debt falls due, from mortgaged property to partial payments, and consequently, the mortgagee is not bound to so apply it.

I am unable to agree with the majority of the Court, that such money should be applied as money received on a

pledge; because, very different rights and duties exist under mortgages and pledges. The general property is in the pledgor, while only a special property is in the mortgagor and the pledgee has only a special property, while the mortgagee has the general property in the mortgaged chattel or estate. The mortgagee has absolute title to the property upon the failure of the mortgagor to pay the debt when the same falls due, subject only to the mortgagor's right to redeem; but the pledgee has only the right to take his pay out of the pledge, upon the failure of the pledgor to pay the debt which the pledge secures, leaving the balance, if any, the property of the pledgor.

The distinction between a pledge and a mortgage has been well defined in the following cases: *Wood* v. *Dudley,* 8 Vt. 430; *Conner* v. *Carpenter,* 28 Vt. 237; *Gifford* v. *Ford,* 5 Vt. 532; *Sampson* v. *Rouse,* 72 Vt. 422, 48 Atl. 666; *Sav. Bank* v. *Capital Sav. Bank & Trust Co.,* 77 Vt. 123, 59 Atl. 197. Very obvious reasons exist why money received by the pledgee should be applied as a payment to the debt which it secures that does not exist where money is received by the mortgagee from the impairment or destruction of a part of the mortgaged property. In the former case the contract of pledge is that the pledgee may take his pay out of the pledge if the pledgor fails to pay as agreed. It is put into the pledgee's hands for that very purpose; while in the latter case, the contract of mortgage is, that the mortgaged property is to become the property of the mortgagee upon failure of the mortgagor to pay as agreed, subject only to the mortgagor's equity to redeem. The mortgagee may, however, treat it as a payment of any part of the debt which is due, but is not obliged to do so, as has already been shown. Money received

on a pledge, is a payment from the date of its receipt, though the creditor may not be compelled to apply it to any part of the debt until it falls due; but money received from the impairment or destruction of mortgaged property, as is shown above represents the property destroyed.   It is such by reason of the mortgage contract and cannot be changed to a payment when a part of the debt falls due without a change of the contract by which it is received by the mortgagee.

All the authorities relied upon by the majority were suits in which the questions involved related to the application of money received on pledges.   As it seems to me there is no analogy between the cases cited in support of the majority opinion and the case at bar, and that that opinion stands unsupported by principle or authority.

Because of the views herein expressed I would affirm the decree below; as I believe it is equitable to both parties and is a fair and reasonable result of a natural construction of the mortgage contract, and is supported by principle and the weight of authority.