EDWARD J. SISK *vs.* MARIA RAPUANO ET ALS.

Third Judicial District, Bridgeport, October Term, 1919.
WHEELER, BEACH, GAGER, CURTIS and WEBB, Js.

A landowner, about to build, borrowed money and secured the loan by a first mortgage upon the premises. A policy of fire insurance was also taken out and made payable, in case of loss, to the mortgagee as her interest might appear. Thereafter the partially-constructed building was burned, and pending the adjustment of the loss the owner sold the premises by warranty deed, free of all incumbrances, promising the grantee to apply the insurance money, when received, to the extinguishment of the mortgage debt. Not long thereafter the mortgagor was adjudicated a bankrupt, and his trustee adjusted the loss with the insurance company, which paid him the entire amount upon receiving from him and from the mortgagee releases in full. As part of the settlement with the insurance company, and contemporaneously therewith, the trustee paid the mortgagee the amount of her note with interest, and she, pursuant to a previous understanding with the trustee, indorsed it "without recourse to me and without warranty express or implied," and delivered it to him, at the same time assigning to him the mortgage; and the trustee, by like indorsement, transferred the note and assigned the mortgage to the plaintiff, who brought suit to foreclose the mortgage. No release was obtained from the defendant owner of the equity, who had no notice or knowledge of the transactions attending the settlement and payment of the fire loss, or of the contemporaneous transfers. The main question at issue was whether the transaction constituted a sale of the mortgage and its purchase by the trustee in bankruptcy, as contended by the plaintiff, or a payment and extinguishment of the mortgage debt, as contended by the defendants. *Held* that the contract of the insurance company to pay the mortgagee was for the benefit of the landowner, and for the very purpose of extinguishing his liability on the note and releasing his land from the incumbrance of the mortgage; that this interest continued after his conveyance of the premises by warranty deed; and that the transaction amounted in substance and effect to a performance of this clause of the policy by the insurance company and an acceptance of the money by the mortgagee, thus extinguishing the mortgage debt and leaving nothing to pass by an indorsement of the overdue note "without recourse" or by the assignment of the mortgage.

While a mortgagor who sells the security subject to the mortgage debt

which he is afterward compelled to pay, may by subrogated to the rights of the mortgagee, this equitable principle has no application where, as in the present case, a part only of the original security is sold, and another part, which the mortgagor has agreed may be primarily applied to the satisfaction of the debt, is retained by the mortgagor for that purpose.

A mortgagee may not be prevented from resorting to the land to secure payment, merely because the mortgagor has agreed with an insurance company, and with a subsequent grantee by warranty deed, that the insurance money in case of loss should be applied in the first instance to discharge the mortgage; but such an agreement is effective in equity to prevent the mortgagor, or his trustee in bankruptcy who has elected to take the benefit of the insurance policy, from afterward purchasing the mortgage with the very fund out of which the mortgagor had agreed to pay it.

Argued November 4th, 1919—decided January 29th, 1920.

ACTION to foreclose a mortgage of real estate, brought to and tried by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered for the defendants, and appeal by the plaintiff. *No error.*

One Grillo, owner of the premises in question, being about to build thereon, borrowed $2,500 for that purpose from Hannah Bowler, to be advanced as building operations required, and executed the mortgage in suit. At the same time the building was insured against loss by fire, under a policy making the loss payable to the mortgagee as her interest might appear. In December, 1916, the unfinished building was destroyed by fire at a time when only $1,000 had been advanced to Grillo by Miss Bowler. The remaining $1,500 was credited on the note. Grillo sold the equity in the property to Ruby for $300, and Ruby conveyed to the defendant Rapuano. In March, 1917, Grillo was adjudged a bankrupt and one Podoloff appointed trustee. Meantime the fire loss had been adjusted at $2,200, and Grillo's claim against the insurance company constituted the only asset of his estate. At Podoloff's request

Miss Bowler executed and left with her attorneys a release of the insurance company and a transfer of the mortgage to Podoloff, trustee, and in May, the insurer paid the loss to Podoloff, who, as part of the same transaction, turned over to Miss Bowler's attorneys $1,017.43, being the amount of the mortgage debt with interest, and received from them the above-mentioned release and transfer. Podoloff assigned the mortgage to the plaintiff, Sisk. Sisk died after this action was commenced and his administrator has entered to prosecute. Other facts are stated in the opinion.

*Walter J. Walsh,* for the appellant (plaintiff).

*William J. McKenna,* for the appellees (defendants).

BEACH, J. The underlying question is whether the transaction described in the finding of facts amounts to a purchase of the mortgage by the trustee in bankruptcy, or whether, as the trial court held, to a payment of the mortgage.

It is said that on the facts found the judgment is erroneous because it violates the rule that the intention of the parties should prevail; that in this case the manifest intention of the parties was that the note and mortgage should be kept alive and not extinguished, and that the court has no right to apply the payment in satisfaction of the mortgage, when the parties had already made a different application of it.

These propositions assume that the trustee and the mortgagee were free to deal with this insurance money as they saw fit, and might make such application of it as they chose; whereas the defendant claimed, and the court so ruled, that by the terms of the policy the insurance money, or so much of it as was necessary for that purpose, had already been applied or agreed to be

applied in case of loss to the payment of the mortgage, and that if the mortgagee elected to accept it, she could not make any other application of the fund without the consent of the mortgagor.

The subject of insurance for the benefit of the mortgagee is exhaustively treated in Jones on Mortgages (Vol. I, 7th Ed.) §§ 400–417, and some of the principal phases of it are discussed by Chief Justice Shaw in *King* v. *State Mutual Fire Ins. Co.*, 61 Mass. (7 Cush.) 1. If a mortgagee insures his own interest at his own expense, the payment of a loss accruing before the mortgage debt is paid is not a payment on the mortgage, and authorities differ as to whether, in such a case, the insurance company on paying the loss is subrogated to the rights of the mortgagee. Mr. Justice Story, in *Carpenter* v. *Providence-Washington Ins. Co.*, 41 U. S. (16 Pet.) 495, holds that the insurer is subrogated. *King* v. *State Mutual Fire Ins. Co.*, *supra*, holds the other way. Conversely, the mortgagor may insure his separate interest without any reference to that of the mortgagee, and in case of loss is entitled to receive the insurance and to deal with it as he pleases. *Carpenter* v. *Providence-Washington Ins. Co.*, *supra;* 27 Cyc. 1263; 1 Jones on Mortgages (7th Ed.) § 397.

But when the insurance is effected by or at the expense of the mortgagor and the policy is made payable to the mortgagee as his interest may appear, it is evidently for the benefit of both mortgagor and mortgagee. The contract of indemnity is primarily with the mortgagor, but the mortgagee is a third party beneficiary. In this State it is held that the insertion of the so-called open-mortgage clause will not of itself entitle the mortgagee to sue on the policy; *Meriden Savings Bank* v. *Home Ins. Co.*, 50 Conn. 396; *Collinsville Savings Soc.* v. *Boston Ins. Co.*, 77 Conn. 676, 60 Atl. 647; also, that before a loss occurs the mortgagee is only a conditional

appointee of the property-owner, and as such appointee is entitled to receive so much of any sum that may become due under the policy as does not exceed his interest as mortgagee. *Collinsville Savings Soc.* v. *Boston Ins. Co., supra.* In the present case a loss had already occurred and become payable while the mortgage debt was still outstanding, and thereupon the appointment and the right of the mortgagee to receive so much of the insurance money as would satisfy the amount of the outstanding debt became absolute.

It sometimes happens that the loss becomes payable before the mortgage debt is due, and then it is said that the mortgagee is entitled to receive the money and apply it to the extinguishment of the debt as fast as it becomes due. *Thorp* v. *Croto,* 79 Vt. 390, 65 Atl. 562, and cases cited. A difference of opinion arose in that case on the question whether the mortgagee might apply the insurance money to the payment of interest, and the prevailing opinion holds that he was bound to retain it and apply it on successive instalments of the principal as they became due.

In this case, however, the mortgage debt was due when the insurance was paid on May 21st, 1917, and no question can arise as to the proper application of the fund by the mortgagee. It will, therefore, be apparent that if Miss Bowler had received her agreed share of the insurance money directly from the insurance company after the debt was due, she would be bound to apply it in extinguishment of the mortgage. *Connecticut Mut. Life Ins. Co.* v. *Scammon,* 117 U. S. 634, 6 Sup. Ct. 889; 27 Cyc. 1264. This follows from the fact that notwithstanding the open-mortgage clause, the contract for indemnity remains one exclusively between the insurance company and the mortgagor. *Collinsville Savings Soc.* v. *Boston Ins. Co.,* 77 Conn. 676, 60 Atl. 647. In this case the contract of the insurance company to

pay the mortgagee was for the benefit of Grillo, and for the purpose of extinguishing his liability on the note and of releasing his land from the incumbrance of the mortgage. After the loss and before it had been adjusted, Grillo conveyed the land to Ruby by warranty deed free from all incumbrances, and undertook to apply the insurance money to the payment of the mortgage debt. He thus remained liable on the note and on the warranty, and had the same interest as before in requiring the insurance company to carry out its agreement so as to extinguish the debt and release the land. The appointment of the trustee in bankruptcy did not release the insurance company from its agreement with Grillo, and if the transaction recited in the finding amounted in substance and effect to a performance of the open-mortgage clause by the company and the acceptance of the fund by the mortgagee, the mortgage debt was extinguished in the manner contracted for by the policy.

In order to accept the alternative claim of the plaintiff, that the transaction was a purchase of the note and mortgage by the trustee with funds belonging to the estate, it is necessary to reach the conclusion that Miss Bowler has abandoned her rights as appointee under the policy, in favor of the bankrupt estate, and permitted her share of the fund to become part of the general assets of the bankrupt estate. The finding is perfectly clear that she did not do so. It is found that the check to Hannah Bowler for the balance of the mortgage was executed by the trustee as part of the payment on the loss by the insurance company to the trustee; also that Miss Bowler did not release the insurance company until the trustee had turned the check for her share of the insurance money over to her attorneys, when they in turn surrendered to the trustee a release to the insurance company. In other words, the

payment of the loss by the insurance company was contemporaneously accompanied by a division of the fund into two parts, one of which went to the mortgagee and the other to the trustee; and since the part which went to the mortgagee simply passed through the trustee's hands because he had succeeded to Grillo's rights under the policy, it never became available for the general purposes of the bankrupt estate, and the court was fully justified in treating the alleged purchase of the note and mortgage as a futile attempt to keep the mortgage alive as against the mortgagor and as against the land in the hands of the mortgagor's grantee.

In addition to this, the plaintiff's claim required the trial court to believe that the trustee in bankruptcy had used the funds of the estate to buy this mortgage, paying principal and interest in full, and had afterward sold it to Sisk for $100 in cash and a release of Sisk's claim of about $1,900 against the estate. Such a transaction would have been quite outside of the powers and duties of trustees in bankruptcy as defined by § 47 of the Bankruptcy Act (U. S. Comp. Stat. 1918, § 9631). No claim appears to have been made by the plaintiff that such a purchase and sale of the mortgage was specifically authorized by the referee or the court; and it is difficult to see why any responsible authority should permit a trustee in bankruptcy to buy an overdue demand note of the bankrupt secured by a mortgage on real estate, the indorsement on the note being "without recourse and without warranty express or implied," and the surrounding circumstances making it at least probable that the trustee was buying a lawsuit.

The only reasonable explanation of the affair is that which the court adopted, namely, that the trustee, who might either elect to carry out or not the contracts of

the bankrupt, according to whether they seemed profitable or otherwise, elected to carry out the contract expressed by the policy, in order to obtain the balance of the insurance money for the estate. Having adopted and elected to carry out the contract expressed in the policy, he was bound to take it as he found it, including the open-mortgage clause. *In re De Long Furniture Co.*, 26 Amer. Bank. Rep. 469, 188 Fed. Rep. 686 (Pa.).

The plaintiff relies on *Gordon* v. *Ware Savings Bank*, 115 Mass. 588, 591, in which it is said that "money received from the insurance took the place of the property destroyed, and was still collateral until applied in payment by mutual consent, or by some exercise by the mortgagee of the right to demand payment of the debt, and upon default of payment, to convert the securities." This is a correct statement of the equities arising from the facts of that case. There the money came into the mortgagee's hands before the debt was due, and it was held that it could not be applied in immediate extinguishment of a debt not yet due, without the consent of the mortgagor. But when, as in this case, the debt is due, the mortgagee has a present right to demand payment and in default of payment to have possession of the collateral. The bankruptcy of Grillo was a default, and the insurance money, or so much of it as was necessary to satisfy the mortgage, stood in the place of the original security and was collateral. That being so, it is hard to see how the fund could be otherwise applied by the mortgagee than in extinguishment of the debt.

It is also claimed that Sisk was a holder in due course of the mortgage note, and as such not affected by any equitable defenses. But this action is not on the note; it is a suit in equity against one who is not a party to the note and has never agreed to pay it, for a foreclosure

of the mortgage. Besides, the maker of the note was bankrupt. The note itself was overdue when Sisk took it in November, 1917; the indorsements of the payee and trustee were not only without recourse, but without warranty express or implied, and Sisk, in dealing with the trustee, was bound to take notice of the limits of his authority. The record of a mortgage is not notice that it remains unpaid, and the surrounding circumstances were such as to put Sisk on inquiry.

A word may be said as to a possible claim which the plaintiff has not made. If a mortgagor sells the security subject to the mortgage debt, and is afterward compelled to pay it, he may be subrogated to the rights of the mortgagee. *Hart* v. *Chase*, 46 Conn. 207. In this case, however, Grillo warranted the land free from all incumbrances, and undertook that the mortgage debt should be paid out of the insurance; and it is apparent that Grillo at least was not equitably entitled to subrogation. This equitable principle has no application when, as in this case, a part only of the original security is sold, and another part which the mortgagor has agreed may be primarily applied to the satisfaction of the debt is retained by the mortgagor for that purpose. Although the mortgagor's agreement with the insurer and with Ruby, that the insurance should be applied in the first instance to pay off the mortgage, might not of itself prevent the mortgagee from exercising her right to resort to the land, it is effective in equity to prevent the mortgagor, or his trustee in bankruptcy who elected to take the benefit of the policy, from afterward purchasing the mortgage with the very fund out of which Grillo had agreed to pay it.

The assignments of error based on the refusal of the court to find as requested in paragraphs twenty-six and twenty-seven of the plaintiff's draft-finding are over-

ruled.    For the purposes of this opinion substantially
all of the other findings asked for have been assumed to
be true.

There is no error.

In this opinion the other judges concurred.