No. 22,656.

THE STOCKTON NATIONAL BANK, *Appellant*, V. THE HOME
INSURANCE COMPANY OF NEW YORK, *Appellee*.

### SYLLABUS BY THE COURT.

FIRE INSURANCE—*Money Payable to Mortgagee—Rights of Purchaser at
Foreclosure Sale.* Where property is insured by the mortgagor for
his own benefit with a loss-payable clause in favor of the mortgagee,
and the mortgagor defaults and the property is sold under foreclosure
proceedings, and during the redemption period the property is de-
stroyed by fire, it is *held,* that the purchaser of the property at the
foreclosure sale cannot maintain an action against the insurance com-
pany to recover the insurance, and that he has no claim to the pro-
ceeds of such insurance on the theory of assignment or subrogation or
otherwise.

Appeal from Rooks district court; CHARLES I. SPARKS,
judge. Opinion filed May 8, 1920. Affirmed.

*W. B. Ham,* of Stockton, for the appellant.

*O. O. Osborne,* of Stockton, *M. A. Fike,* and *Fenton Hume,*
both of Kansas City, Mo., and *E. L. Snyder,* of Chicago, Ill.,
for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover on a fire insur-
ance policy.

The late Henry Cooley, of Rooks county, purchased a policy
of fire insurance upon his farmhouse and barn, and also upon
his household goods. The farm was subject to a first mort-
gage in favor of J. R. Loomis, and with the insurance com-
pany's consent the insurance on the farmhouse was to be pay-
able to the mortgagee as his interest might appear. The
plaintiff, The Stockton National Bank, held a second mortgage
on the farm. Cooley died, and Loomis brought suit to fore-
close his mortgage. The bank, as junior mortgagee, was im-
pleaded and its second mortgage was also foreclosed. The
sum of the two mortgages was about all that the farm was
worth, and to protect its lien the bank bought the farm at
the foreclosure sale. During the redemption period the farm-
house and its contents were burned. The widow of Cooley,

his administratrix, collected the insurance on the household goods, and the bank as purchaser at the foreclosure sale claimed to be subrogated to the interest of Loomis, the first mortgagee, and demanded payment of the insurance on the farmhouse. The insurance company denied liability. Action was begun, issues were joined, and the trial court gave judgment for defendant on the pleadings and upon the opening statement of counsel for the bank; hence this appeal.

A majority of this court hold that the judgment of the trial court was correct. The purchaser of the insured property at the sheriff's sale had no legal claim upon the insurance policy, which covered the property for the benefit of the mortgagor and mortgagee, nor was it subrogated to the rights of the mortgagee in the proceeds of the insurance. An insurance policy is a personal obligation between the insurance company and those with whom it chooses to bargain. It was willing to carry the risk for Cooley and his original creditor, and bound itself to do so; but it never did obligate itself to carry the fire risk on the property for any purchaser of the property at sheriff's sale if the owner of it became so indifferent in regard to the property as to permit it to be sold under mortgage foreclosure. An insurance company may be perfectly willing to carry insurance on a mortgaged property, and also willing to protect the interest of the mortgagee, where the mortgagor is diligently caring for the property, keeping the interest paid up on the mortgage, keeping the taxes paid and the property in repair; but the insurance hazard is or may be much different and much greater when the mortgagor has so far defaulted as to permit the property to be sold by the sheriff under foreclosure proceedings. The insurance company is not bound to carry such a risk without expressly consenting thereto, and without the payment of a larger premium rate for the possibly greater moral hazard involved. The purchaser at the sheriff's sale, although that sale was conditional and the property was subject to redemption, had an insurable interest which he himself might have protected by insurance (*Deming v. Dickerman*, 63 Kan. 728, 66 Pac. 1029; 2 Joyce on The Law of Insurance, 2d ed., § 981a) ; but that interest was not covered by the policy issued for the benefit of the mortgagor and the original mortgagee.

(Note, 6 L. R. A., n. s., 448; 2 Joyce on The Law of Insurance, 2d ed., § 1046.) The learned trial judge in this case delivered a written opinion, in which he noted that our reports had no precedent to govern this precise question. He was guided by the analogy and doctrine which he drew from the case of *Lett v. G. F. Ins. Co.*, 125 N. Y. 82, part of the syllabus of which reads:

"A policy of fire insurance is a personal contract by which the insurer undertakes to indemnify the assured against loss, in a manner and subject to conditions therein described. The obligation does not pass with the insured property to an assignee or purchaser thereof without the consent of the insurer, and such consent alone can, in case of a transfer, keep in life the agreement.

"Defendant issued a policy of insurance to B. upon his property, loss being made payable to A., as mortgagee. B. subsequently conveyed the property subject to the mortgage, and his grantee conveyed to plaintiff; at the time of such conveyance, B. executed to plaintiff an assignment of his interest in the policy. No consent to the change of title was indorsed by defendant upon the policy, although such consent was made by the policy a condition of its continuance in force. On application of plaintiff for a consent, he was told by an officer of plaintiff that the policy had been canceled; this was not, in fact, true; thereupon plaintiff took out a policy for the same amount in another company, and demanded from B. a return of the allowance for premium made to him upon the transfer of the policy. In an action upon the policy, *held*, that it was invalidated by the failure to obtain defendant's consent to the change of title, and that there was nothing from which such consent, or a waiver of the condition, could be inferred; also, that defendant acquired no interest by his assignment from B., as the latter had no interest at that time in the policy, it having become void by his act."

The judgment of the trial court is affirmed.

DAWSON, J. (dissenting) : With the general doctrine that an insurance policy is a personal contract, and that the insurance company is not bound where it has not contracted to be bound, nor beyond the scope of its obligation, I agree. My objection to this decision is that I think it overlooks the long road which the courts, even this court, have already traveled away from the primitive theory of personal contract touching the liability of insurance companies, in considering the interest of mortgagees of insured property and their assignees. In *Loan Association v. Insurance Co.*, 74 Kan. 272, 86 Pac. 142, the owner of a house in Fort Scott mortgaged it to a loan association and took out a fire insurance policy to protect himself and

the mortgagee. Later the mortgagor assigned his interest in the insurance policy to a trustee, the insurance company assenting. The property was injured by fire. The trustee declined to make proof of loss, and conveyed the property to the mortgagee. The insurance company resisted payment of insurance to the mortgagee, on one ground; among others, that there was a change of ownership to which it had not assented. This court said:

"The liability of the insurance company is in no way affected thereby; it remains the same as if the mortgagor had retained the title to the land. The deed was taken by the association simply as security for the debt of the mortgagor, and this was one step toward a realization thereof. . . . As to the claim that the loan association was bound by the mortgage clause to inform the insurance company of all changes in the ownership of the property, it is sufficient to say that in this state it has been held that the acquisition of the legal title to insured property by the mortgagee is not such a change of ownership as is contemplated by the provisions of this mortgage clause (*Dodge v. Hamburg-Bremen Fire Ins. Co.*, 4 Kan. App. 415, 46 Pac. 25; *Insurance Co. v. Ward*, 50 Kan. 346, 31 Pac. 1079; *Insurance Co v. Boardman*, 58 Kan. 339, 49 Pac. 92), and, therefore, the omission is not material." (pp. 277, 278.)

This court has held that the foreclosure and sale of insured property to the mortgagee is not such a sale or assignment as will avoid the insurance because of want of the express consent of the insurance company. The right of the mortgagee, whether before sale or after sale but before the expiration of the redemption period, has been declared to be "an equitable lien upon the proceeds of the policy" where a loss occurs. (*Chipman v. Carrol*, 53 Kan. 163, 35 Pac. 1109.)

Part of the syllabus in *Bank v. Insurance Co.*, 91 Kan. 18, 137 Pac. 78, reads:

"A mortgage clause that the loss, if any, shall be payable to the mortgagee as his interest may appear, 'subject, however, to all the terms and conditions of this policy,' does not relieve the insurer from liability upon a policy containing a condition that it shall be avoided by proceedings to foreclose any mortgage on the property—the insuring of a mortgage lien being sufficient indication that the company must have contemplated a possible or probable foreclosure." (Syl. ¶ 3.)

In *Jones v. Insurance Co.*, 94 Kan. 235, 146 Pac. 414, it was held that the commencement of foreclosure proceedings did not avoid an insurance policy purchased by the mortgagor for his own benefit and that of his mortgagee. Mr. Justice Marshall, speaking for the court, said:

Bank v. Insurance Co.

"Of what use is insurance held by a mortgagee on mortgaged property if the commencement of foreclosure proceedings vitiates the policy? An insurance policy held by a mortgagee, under a mortgage clause, as above set out, contemplates that there may be a foreclosure of the mortgage." (p. 236.)

To that observation it could pertinently be added that the insurance company must have contemplated that somebody, not necessarily the mortgagee, would become the purchaser at the foreclosure sale.

In *Whiting v. Burkhardt,* 178 Mass. 535, 86 Am. St. Rep. 503, it was held that the assignment of a mortgage on property covered by insurance under a loss-payable clause, conveyed to the assignee an assignment of the proceeds of the insurance policy. It was held that such assignment was not a transfer of the policy in violation of the contract which stipulated that the policy should be void if assigned without the assent of the insurance company in writing, but merely an assignment of the right to receive the proceeds as security for the mortgage debt. One section of the syllabus reads:

"One to whom an insurance policy is payable as 'mortgagee, as his interest may appear,' may assign to the assignee of the mortgage the right to receive on the same terms the proceeds of the policy."

(See, also, Note, 25 L. R. A. 305; 19 R. C. L. 406-407.)

The purchaser of mortgaged property at a foreclosure sale, where the mortgagor has eighteen months to redeem, is in effect, during that redemption period, but a mere assignee or subrogee of the mortgagee, and as such he is equitably entitled to everything the original mortgagee would get. It is not a matter of substantial concern to the insurance company who may be the purchaser at the foreclosure sale, at least where there is no change of possession of the property. The hazard that the mortgagor might default and that the insured property might be subjected to foreclosure sale was one which the insurance company was bound to take into account when it consented to carry the risk for the mortgagee "as his interest might appear."

I therefore dissent.