Argued by appellant and submitted on brief by respondent
October 18; affirmed December 10, 1929

# EVA MILLER ET AL. *v.* GOLD BEACH PACKING CO. ET AL.

(282 Pac. 764)

For appellant there was a brief over the name of *Mr. M. L. Hallmark* with an oral argument by *Mr. Carl E. Wimberly*.

For respondent there was a brief over the names of *Mr. Collier H. Buffington* and *Mr. Maurice W. Seitz*.

ROSSMAN, J. The controlling issues are (1) whether the covenant of the lease quoted in the preceding statement required the tenant to rebuild the structure in event it was destroyed by fire; (2) whether a tenant, who procures a policy of insurance for the full value of the building and who, upon the latter's destruction, collects insurance money in an amount representing the value of the two estates in the building, may retain only such portion of it as represents the value of his estate and must account to the remainderman for the balance.

To support their argument that the clause of the lease previously mentioned required the tenant to repair and rebuild, the plaintiffs call to our attention the following authorities: *Abbey v. Billups,* 35 Miss. 618 (72 Am. Dec. 143), *Armstrong v. Maybee,* 17 Wash. 24 (48 P. 737, 61 Am. St. Rep. 898) ; 36 C. J., Landlord & Tenant, § 782, 16 R. C. L., Landlord & Tenant, § 605 and 611, together with a note found in 95 Am. Dec. 122. We have carefully studied all of the foregoing but find that they do not support the plaintiff's contentions. In *Abbey v. Billups,* the lease contained an express covenant requiring the tenant to return the house in as good condition as when received, and during the course of the tenancy to repair the structure. In *Armstrong v. Maybee* the lease contained a covenant similar to that in *Abby v. Billups.* Based upon these covenants both courts held that a judgment in favor of the landlord, when the tenant failed to

reconstruct the destroyed building, was justified. Section 782 of 36 C. J., Landlord & Tenant, states the effect of a covenant by a tenant to maintain the building in good repair. 16 R. C. L., Landlord & Tenant, § 605, comments upon a similar subject; we quote from it thus: "Under this rule, if the tenant enters into an express and unconditional covenant to repair and keep in repair or to surrender the premises in good repair, he is liable for the destruction of the buildings not rebuilt by him. * * * " The note in 95 Am. Dec. concerns itself with a similar covenant. It is apparent from the foregoing that these authorities are of no assistance in the solution of our problem unless the excerpt from the lease previously mentioned amounts to a covenant to repair or return the leased premises in as good condition as when received. In *Armstrong v. Maybee,* supra, the Washington court quoted from *Van Wormer v. Crane,* 51 Mich. 363 (47 Am. Rep. 582), the following statement of the rule governing the construction of the covenants contained in leases.

"In construing the covenants contained in a lease the cardinal rule is that the intention of the parties shall govern; and the courts will not extend or enlarge the obligation of the lessee beyond the plain meaning of the language used and the intention existing at the time it was made; and if there is not an express stipulation to the effect to restore buildings and other property leased, destroyed by casualties from fire or water, without fault or neglect on the part of the tenant, the loss must fall upon the landlord or reversioner."

In 36 C. J., Landlord & Tenant, § 774, p. 134, the editor in reciting the rules governing the construction of the stipulations of a lease, which the landlord contends shifts upon the tenant the burden of making repairs, states: "The court should not extend or enlarge the obligation of the tenant beyond the plain meaning

and intention of the parties, and in order to shift on the tenant a burden which would naturally fall on the landlord, the warrant for the charge should be plainly discoverable in the lease.'' From 16 R. C. L., Landlord and Tenant, § 683, we quote: ''* * * The tenant is not, merely by reason of the relationship, bound to make substantial and lasting repair * * * or to rebuild premises which may have become * * * accidentally dstroyed.'' It is generally held that a stipulation requiring the lessee to surrender the premises at the expiration of the term in as good order and condition as when received, reasonable wear and tear excepted, does not impose upon the lessee a duty to rebuild in the event of an accidental destruction, in the absence of an express covenant to repair: Tiffany Landlord and Tenant, § 118; 36 C. J., Landlord and Tenant, § 865.

■ To us it seems that the plaintiffs are inviting us to place a construction upon the aforementioned covenant of the lease which the latter is incapable of sustaining. We find nothing in this clause nor in the rest of the lease which requires the tenant to repair, to build, or to rebulid or to leave the premises in as good condition as when received. Our construction of this covenant is that the tenant shall not remove any buildings which it may construct and that at the termination of the lease these structures shall belong to the lessor.

■ In arguing that the procurement of fire insurance to the full value of the building and its collection upon the destruction of the latter is conclusive evidence that the tenant insured both estates, and that therefore he must account for the portion of the proceeds of the insurance which represents the value of the remainder-

man's estate, the plaintiffs concede that their contention is opposed by the majority of the adjudications which have passed upon similar sets of facts. This admission upon their part is supported by the authorities: Cooley's Briefs on Insurance, 2d ed. p. 6262, and note in 35 A. L. R. 40. The various considerations, which have moved some courts to adopt the view advocated by the plaintiffs and others to favor that urged by the defendant, are ably reviewed in the majority and the dissenting opinions in the recent case of *Clark v. Leverett* (Ga), 126 S. E. 258 (37 A. L. R. 180), and in the opinions in the other two recent cases of *Thompson v. Gearhart,* 137 Va. 427 (117 S. E. 67, 35 A. L. R. 36) and *Brownell v. Board of Education,* 239 N. Y. 369 (146 N. E. 630, 37 L. R. A. 1319) ; the note in 35 A. L. R. 40 is exhaustive. Due to the fact that the authorities have thus recently reviewed, analyzed and compared, we find no occasion for setting forth our review of them. The courts, which have reached the conclusion that the remainderman is entitled to no interest in insurance money obtained by a tenant upon a policy of insurance procured by him without any agreement between the two that he should obtain protection for both premise their holdings upon the following grounds: (1) the tenant as well as the remainderman has an insurable interest; (2) the tenant is under no obligation to insure the property for the benefit of the remainderman; (3) the contract of insurance, which either obtains, is personal to him, and the other has no interest in it; (4) if the tenant obtains from the insurance company more than the value of his estate, the remainderman does not thereby become entitled to the surplus, because the contract of insurance does not undertake to indemnify him; (5) the tenant is neither required to rebuild nor to provide a fund to

take the place of the building upon its destruction; (6) the proceeds of the fire insurance contract are not proceeds of the destroyed building; they come to the tenant from a third party as the result of a contract for indemnity; (7) the insurable estates of the tenant and the remainderman are separate and distinct; they are not united or merged under the contract of insurance and hence the latter affords the remainderman no basis for any relief; (8) the amount of the insurance policy obtained by the tenant, and the amount ultimately collected is for the determination of the tenant and the insurer, and it does not affect the remainderman; (9) if a tenant in obtaining a policy of insurance or in obtaining a settlement places an excessive value upon his interest in the property his act does not constitute him the agent of the remainderman so that the latter becomes entitled to any part of the insurance money.

The cases, which represent the minority view, do not adopt reasons which can be as clearly stated as the foregoing, and in some instances the reasons which have persuaded one court apparently do not appeal to all of the others. The following, we believe, is a fair statement of the reasons found in this group of cases: (1) public policy is violated by a policy of insurance which promises to pay to a tenant an amount equal to the value of the remainderman's estate in addition to the value of his own, and, therefore, since the law favors a construction upon contracts which will not impute to the parties bad faith, it will assume that the tenant, who obtained a policy stipulating for the payment of an amount equal to the full value of the building, secured protection not only for himself but also for the remainderman; (2) the tenant is a quasi trustee for

his remainderman, and, therefore, the insurance contract obtained by him is available to both; (3) the duty owed by a life tenant to exercise ordinary care in preserving the property may include a duty upon his part to insure the property; (4) the insurance money takes the place of the destroyed building, and should be used to restore it; (5) the policy of insurance runs with the land, and, therefore, protects all as their interests may appear; (6) if the amount obtained by the tenant is no more than the amount of his loss he may keep all of it, but if it is greater he must account to the remainderman for the surplus.

In this minority group is South Carolina; it has carried the idea that the life tenant is a quasi-trustee to such a length that it has impressed a trust, in favor of the remainderman, upon properties in which the tenant invested the proceeds of the insurance contract: *Green v. Green,* 50 S. C. 514 (62 Am. St. Rep, 846, 27 S. E. 952). The New York Court of Appeals in *Brownell v. Board of Education,* 239 N. Y. 369 (146 N. E. 630, 37 A. L. R. 1319), has described some of the reasoning of the minority group thus: "These reasons may savor of layman's ideas of equity, but they are not law." It seems to us that the reasons employed by the minority are not sound. While it is true that public policy is opposed to contracts for over-insurance, this rule of law is misused when invoked for the first time after the insurance money is paid, and when it is sought to divert a portion of it to one who was too indifferent to procure protection for himself. The rule of construction which requires a court to place upon a writing a lawful purpose, rather than one which is opposed to public policy, is available only when such a construction will not do violence

to the plain meaning of the words. Here it is clear that the policy was not intended to indemnify the plaintiffs, and since the validity of the contract is not the point at issue the aforementioned rule of public policy has no proper place in this controversy. Next, while it is true that an occasional decision speaks of the relationship of a life tenant to his remainderman as of a quasi-fiduciary nature, we fail to understand how this relationship, even if admitted, can add to the trust property a contract of insurance obtained by the tenant with his personal funds for the protection of his separate estate. The contention that a life tenant's duty may include the procurement of insurance for the protection of the remainderman finds practically no support in the authorities. There can be no occasion for holding that the insurance money shall take the place of the destroyed building and shall be used to restore it, when the tenant was under no obligation to rebuild. The argument that the insurance runs with the land does violence to the contract of the parties; the insurer would never know the name of the insured, and might thus have forced upon it one whom it would not care to insure. Finally, to concede that a tenant, who has received an amount equivalent to the value of his interest, may keep all of it, but contend that another, who has received more, must account to the remainderman for the surplus, discloses the weakness of much of the reasoning employed by the minority group of cases. It is in harmony with the use made by the minority of the agreement concerning public policy, but misfits the rest of the contentions. Should a case develop within the jurisdiction of the minority courts wherein the remainderman was fully protected by insurance, obtained by himself, or had a cause of action

against a tortious party, whose act caused the fire, those courts would find it difficult to know what disposition should be made of the tenant's surplus. In such a situation all of their reasons would have to be discarded and yet the facts would remain that the tenant had obtained more than a fair award.

Our prior decisions are not entirely silent upon this subject. In *Strong v. Moore*, 118 Or. 649 (245 P. 505, 23 A. L. R. 1217), the plaintiff was the optionee of a piece of real property. Before he contracted to make the purchase the property was destroyed and in the above suit he sought to have the proceeds of the fire insurance contract applied upon the purchase price. The contract of insurance was not owned by him, he had not paid the insurance premiums, and he was not named as the party insured. In rejecting his suit, this court expressed itself in part thus:

"The other fallacious contention is that they were the owners of the insurance money. They say in the complaint that the property was insured, but they do not say that it was insured for their benefit. They do not claim to have paid anything to secure the insurance and do not assert in any way that they were ever parties to any policy of insurance on the premises. As stated in *New England Loan & Trust Co. v. Kenneally*, 36 Neb. 895 (57 N. W. 759),—'The general rule of law is that a policy of fire insurance is a personal contract with the party insured, and does not run with the land or pass to the purchasers by a sale of the premises or property insured and any assignment of the policy must be with the knowledge and consent of the insurer.' This case was virtually decided in *Strong v. Moore*, 105 Or. 12 (207 P. 179, 23 A. L. R. 1217). That precedent is controlling here. The law is the same now as then."

Where the relationship was that of vendor and vendee under an executory contract of sale, it has been

likewise held that the contract of insurance carried by the vendor is for his exclusive benefit and is not available to the vendee: *Brownlee v. Board of Education,* 239 N. Y. 369 (146 N. E. 630, 37 A. L. R. 1319) (annotated).

It will be observed that we have previously committed ourselves to the proposition that insurance money, derived as a result of a contract of indemnity purchased by the optioner, is unavailable to the optionee, because "a policy of fire insurance is a personal contract with the party insured."

It seems clear to us that the contract was personal in the present suit; the tenant was not the plaintiffs' agent and was not their trustee. If the plaintiffs obtained more than fair compensation we know of no rule of law which authorizes us to give the surplus to the plaintiffs. The plaintiffs cannot find in this generous award a right whereby they may demand a part of it. They were strangers to the contract of insurance, and must now be content to remain strangers to its fruits.

The appellants also object to the cost bill filed by the defendant; we have given this matter careful consideration but find no merit in the appellants' contentions.

It follows that the conclusion below must be affirmed. AFFIRMED.

BELT and BROWN, JJ., absent.