Argued April 14, modified and remanded July 6, petition
for rehearing denied August 3, 1955

## HASKIN ET AL. *v.* GREENE

286 P. 2d 128
286 P. 2d 137

*Lee A. Ellmaker,* Portland, argued the cause for appellants. With him on the brief were Phelps, Burdick & Walker, Portland.

*Norman N. Griffith,* Portland, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and LUSK, BRAND and PERRY, Justices.

LUSK, J.

The principal question on this appeal arises out of conflicting claims to the proceeds of a policy of fire insurance on a building which was damaged by fire. The claimants on the one side are the purchasers of the property involved at execution sale. They were first mortgagees who had foreclosed their mortgage. The fire occurred while they were in possession and before the period of redemption had expired. The insurance policy, which was issued to the mortgagors, contained a standard mortgage clause in favor of the mortgagees. On the other side of the question is a second mortgagee, who acquired the title of the mortgagors before foreclosure and gave notice of intention to redeem in accordance with ORS 23.570. Thereafter, an accounting was had, pursuant to ORS 23.560, which resulted in a decree favorable to the redemptioner from which the purchasers at execution sale have appealed.

The facts are as follows: In June, 1952, Donald L. Greene was the owner of the South 100 feet of Lot 25, Portview Tracts, Multnomah County, commonly known as 7503 N. E. Killingsworth, on which there was a building used as a restaurant. He sold the property to Dean H. Lee and Lim Lee, husband and wife, and Lee Yick. The purchasers executed a first mortgage in the amount of $6500 to D. M. Haskin and J. W. Haskin, the appellants, and a second mortgage in the amount of $16,650.12 to Forrest F. Greene, the respondent. The mortgage to the Haskins contains a provision requiring the mortgagors to keep the build-

ing on the premises insured against loss or damage by fire in the sum of $6500 for the benefit of the first mortgagees. The transaction was consummated by the deposit of instruments and moneys with Title and Trust Company as escrow agent, and the carrying out by the escrow agent of instructions from the interested parties with respect to the delivery of instruments and disbursement of moneys. Under this arrangement George A. Rahoutis, as agent for the Haskins, transmitted to Title and Trust Company $6500, the amount of his principals' loan to the purchasers of the property, with instructions, among others, to pay therefrom the premium on a fire insurance policy to be issued upon the building. This instruction Title and Trust Company followed by remitting to George A. Rahoutis Co., agent for Royal Exchange Assurance, which wrote the policy, the sum of $477.42 covering the premium for three years.

The policy was in the amount of $6500 and for the term commencing June 28, 1950, and ending June 28, 1953. Attached to it was an endorsement containing a mortgage clause with the following provisions:

"Subject to the terms, covenants and conditions set forth in this rider, loss or damage (if any) under this policy, on buildings only shall be payable as follows: firstly, to D. M. and J. W. Haskin as first mortgagee  *  *  *

"2. Subject to and in consideration of the terms, covenants and condition set forth in this rider this insurance, as to the interest of the mortgagee only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings, or notice of sale relating to said property, nor by any change in the title or ownership of said property, nor by the occupation of the prem-

ises for purposes more hazardous than are permitted by this policy."

The transactions just described took place in the latter part of June, 1950.

On August 23, 1951, the Haskins filed suit to foreclose their mortgage. Prior to that, in February and March of 1951, the Lees and Yick had, by separate deeds, conveyed the property to the respondent Greene. They did not, however, assign the insurance policy. On August 4, 1952, the court entered a decree of foreclosure, and on September 8, 1952, the Haskins bought in the property at execution sale for $7671.04, the full amount of the judgment, interest, costs and disbursements.

The appellants Haskin through their agent Rahoutis, went into possession of the property, and on December 11, 1952, a tenant took possession under a lease executed on behalf of the appellants by Rahoutis. On December 14, 1952, a fire occurred doing substantial damage to the restaurant building. On December 19, 1952, Mr. Norman N. Griffith, attorney for the respondent Greene, wrote to the appellants Haskin, in care of their agent Rahoutis, advising them that Greene claimed the proceeds of the insurance under the policy written by Royal Exchange Assurance as redemptioner from the execution sale, and on December 23, 1952, Messrs Phelps, Burdick and Walker, as attorneys for the Haskins, answered Mr. Griffith by a letter which rejected the respondent's claim and stated: "The proceeds of the policy are being used to rebuild the property and we find that the cost of rebuilding the property is practically equal to the face amount of the policy." Again, on January 19, 1953, Mr. Griffith notified the appellants by letter that his client intended to "pay off the judgment" and de-

manded that the proceeds of the fire insurance collected be applied against the judgment. The appellants, however, proceeded with the restoration of the building, and in the latter part of January, 1953, received from the insurance company the cost of the repairs, $4992.

On January 28, 1953, the respondent gave notice to the appellants of his intention to apply to the sheriff for the purpose of redeeming, pursuant to ORS 23.570, and thereafter the appellants filed in the office of the sheriff their accounting in accordance with ORS 23.560. The respondent filed objections to the accounting, thus raising the issue as to the ownership of the proceeds of the fire insurance policy and other issues which will be later considered.

■ The court found that the premium of $477.42 was paid by the redemptioner, Forrest F. Greene. We think that this finding is without support in the evidence. A copy of the closing statement of the escrow agent, Title and Trust Company, which is an exhibit in the foreclosure proceeding, is relied on by the respondent to support this finding. But the only reference to that matter in the closing statement is the following: "Paid * * * George A. Rahoutis Company for fire insurance premium $477.42." As already stated, the instruction to Title and Trust Company from George A. Rahoutis Company, when transmitting to it the amount of the mortgage loan, $6500, was to pay therefrom the premium on a fire insurance policy to be issued upon the building. There is no evidence that the Title and Trust Company did not follow this instruction, and it must be presumed that it did so. That being the case, the only reasonable conclusion is that the premium was paid by the mortgagors.

The court also found that the mortgagees received from the insurance company the sum of approximately $4980 as proceeds of the insurance policies and that they repaired the building. Appellants challenge this finding, and urge that the evidence shows that the insurance company exercised its option under the policy to make the repairs and itself made them. There is some slight evidence to this effect, but to us it is not at all convincing. No claim of this kind was made by the appellants or their agent, who was also the agent for the insurance company, when the respondent first made demand for the insurance money, and no such claim is asserted in the appellants' pleadings. The contention appears to be an afterthought, and we sustain the finding of the Circuit Court on this issue.

The question for decision is whether the respondent, as redemptioner, may require the appellants to account to him for the insurance money they received.

As grantee of the mortgagors the respondent Greene had the right to redeem the property within one year after the date of sale by paying the amount of the purchase money with interest at the rate of six percent per annum from the date of sale, and certain other items, subject, however, to the setoff provided in the statute. ORS 23-560.

The appellants Haskin contend that Greene has no rightful claim to the insurance money at all, and that in any event it would be inequitable to allow him a reduction in the amount required to redeem in view of the fact that the building has been repaired and restored to its former state.

■ The general rule is that where a mortgagor takes out and pays for a policy of fire insurance on a building upon the mortgaged premises, and there is at-

tached to the policy a rider making the insurance payable to the mortgagee as his interest shall appear, sometimes referred to as the "open mortgage clause", in case of a loss while the mortgage is in full force the mortgagee has a prior or superior right to the proceeds of the policy to the extent of the mortgage debt. 46 CJS 27, Insurance § 1147. See *Butson v. Misz,* 81 Or 607, 612, 160 P 530. As stated in the well-considered case of *Malvaney v. Yager,* 101 Mont 331, 338, 54 P2d 135:

> "Under such a mortgage clause, if loss occurs while the mortgage is in full force and after the debt is due, the mortgagee is bound to collect the insurance money and apply it in full, or *pro tanto* satisfaction of the debt, and such payment amounts to satisfaction of the mortgage to the extent of the payment (Connecticut Mutual Life Insurance Co. v. Scammon, 117 U.S. 634, 6 S. Ct. 889, 29 L. Ed. 1007; Sisk v. Rapuano, 94 Conn. 294, 108 A. 858, and note thereto in 11 A.L.R. 1295); and if the mortgage debt be not due at the time of loss and payment, the mortgagee shall hold the insurance money to discharge the debt or payments as they fall due. Thorp v. Croto, 79 Vt. 390, 65 A. 562, 10 L.R.A. (N.S.) 1166, 118 Am. St. Rep. 961, 9 Ann. Cas 58)."

■ It is also held that under an open mortgage clause the mortgagee is not a party to the contract but only an appointee whose rights are dependent upon those of the insured, and a violation by the latter of the conditions of the policy will forfeit the rights of such appointee (*Smith v. Germania Fire Ins. Co. of N. Y.,* 102 Or 569, 202 P 1088, 19 ALR 1444; 5 Couch, Cyc. of Insurance Law, 4432 § 1215a), though, according to one line of decisions which this court has followed, the mortgagee still may recover if the loss-payable clause fails to refer to nullifying conditions mentioned

in the body of the policy. *Meader v. Farmers' Mut. Fire Relief Ass'n,* 137 Or 111, 118, 1 P2d 138.

■ Our concern, however, is with the rights of the parties where a fire loss occurs after foreclosure and during the redemption period. It is generally held that a mortgagee who has purchased the property at sheriff's sale then no longer is entitled to the benefits of an insurance policy taken out by the mortgagor and containing a simple loss-payable clause. *Reynolds v. London & Lancashire Fire Ins. Co.,* 128 Cal 16, 60 P 467, 79 Am St Rep 17; *Malvaney v. Yager,* supra; *Stockton National Bank v. Home Insurance Co.,* 106 Kan 789, 189 P 913, 11 ALR 1304; *Rawson v. Bethesda Baptist Church,* 221 Ill 216, 77 NE 560, 6 LRA (ns) 448; 46 CJS 29, Insurance § 1147; 1 Glenn on Mortgages 585 § 94.1. See Annotations, 11 ALR 1310, 52 ALR 900. This is for the reason, as stated in *Reynolds v. London & Lancashire Fire Ins. Co.,* supra, that the insurance was upon the interest of the mortgagor, that the mortgagee has an interest in the policy only as security for his debt, and that, as a result of the foreclosure proceedings and the purchase of the mortgaged premises for the full amount of the debt and judgment, the debt is fully extinguished and the purchaser ceases to be a creditor or mortgagee. That was the holding in an action brought by a mortgagee against an insurance company. In *Rawson v. Bethesda Baptist Church,* supra, the controversy was between the mortgagor and the mortgagee, and the decision for the former was upon the ground that during the period of redemption the mortgagor still has an insurable interest in the property. "It was entitled to the possession and use [though this is not so in Oregon] of the church during the period of redemption". It had a right of redemption, "and after the fire it would

require the same amount to redeem the property, which was then without the building and worth less by the amount of the loss." The mortgagee had acquired a right to a conveyance of the property at the end of the period of redemption if there should be no redemption, "but his insurable interest was not covered by the contract of insurance". A contrary authority is *Carlson v. Presbyterian Board of Relief,* 67 Minn 436, 70 NW 3, the court taking the view that the interest of the mortgagee in the premises remained practically the same after the sale as before "except the purchase price must be repaid to him by the mortgagor, with interest, within the year, or his title under his mortgage becames absolute. Until the time to redeem expires, he has a lien on the premises, and holds them for the security of his bid." To the same effect see *Wall v. First National Bank of Crosby,* 50 ND 631, 197 NW 592.

◼ The policy here involved, however, has attached to it a so-called standard or union clause providing that the insurance "shall not be invalidated by any act or negligence of the mortgagor or owner" of the property "nor by any foreclosure or other proceedings." Under such a clause the fire insurance company is obligated by independent contract to pay the insurance moneys directly to the mortgagee, even though he be the purchaser at the foreclosure sale. *Savarese v. Ohio Farmers' Ins. Co.,* 260 NY 45, 182 NE 665, 91 ALR 1341; *Pink v. Smith,* 281 Mich 107, 274 NW 727; *Malvaney v. Yager,* supra; *Trustees of Schools v. St. Paul F. & M. Ins. Co.,* 296 Ill 99, 129 NE 567; *National Fire Ins. Co. v. Finerty Inv. Co.,* 170 Okla 44, 38 P 2d 496; 1 Glenn on Mortgages 181 § 27.4; 5 Couch, op. cit., § 1215b; 91 ALR 1354; 46 CJS 30, Insurance § 1147; 4 Joyce on Insurance (2d ed) 4776 § 2795.

As the court stated, referring to such a clause, in *Queen Ins. Co. v. Dearborn Savings, Loan & Bldg. Ass'n,* 75 Ill App 371, 376, affirmed 175 Ill 115, 51 NE 717:

"* * * The doctrine is well established by the decisions of this State, that when a mortgage clause, like the one here, is attached to a policy of insurance, it operates to create a new and distinct contract between the underwriter and the mortgagee. After such clause is attached there are two contracts of insurance in force by reason thereof and by reason of the policy; one of which is a contract between the underwriter and the insured, and the other is between the underwriter and the mortgagee."

Under Oregon law a purchaser at execution sale acquires an equitable estate, conditional, however, and subject to be defeated by the payment of a certain sum within a certain time. If not paid within that time the right to a conveyance becomes absolute without any further sale or other duty to be performed by anybody. The legal title remains in the judgment debtor—in this case the mortgagor or his grantee—with the right in him to defeat the sale already made by redeeming within the statutory period. *Hughey v. Cornell,* 137 Or 589, 592, 3 P2d 781; *Abraham v. Chenoweth,* 9 Or 348, 351-352. And the privilege of redeeming after the sale is not an equitable but purely a statutory right. *Hansen v. Day,* 99 Or 387, 390, 195 P 344; *Dray v. Dray,* 21 Or 59, 67, 27 P 223.

In *Malvaney v. Yager,* supra, the court held that under a policy containing a standard mortgage clause, taken out and paid for by the owner pursuant to the terms of the mortgage, where the building insured was destroyed by fire during the redemption period and the owner redeemed, he could require the mort-

gagee, who had purchased the property at execution sale, to account for the insurance money received by him. This is because the mortgagee is entitled, upon redemption, only to the sum which he paid for the property with interest, and the "insurance money stands instead of the building for the loss of which it was paid, and, in the event of redemption within the time the mortgagor or redemptioner is entitled to the money." This principle was recognized, though the point was not involved, in *In re Hackbart*, 203 Ia 763, 210 NW 544, 52 ALR 895, and *Carlson v. Presbyterian Board of Relief*, supra.

■ But, where the insurance is taken out and paid for by the mortgagee after he has foreclosed and purchased at execution sale, it is held that the owner on redemption has no claim to the insurance money because a contract of fire insurance is a personal contract of indemnity between the purchaser and the insurance company alone and does not inure to the benefit of the party entitled to redeem. *Deming Investment Co. v. Dickerman*, 63 Kan 728, 66 P 1029; *Cushing v. Thompson*, 34 Me 496. In the latter case the court said:

> "The interest insured was that of the defendant alone. It does not appear, that the complainant paid any part of the premium, had any connection with the insurance, or knew of its existence, till the loss of the property. The defendant could not have compelled payment from the complainant of the premium or any part of it. It is well settled, that a contract of insurance does not run with the estate, as incident thereto, but is an agreement with the underwriters against a loss, which the *assured* may sustain, and not the loss, which *another* may be subjected to, having an interest as mortgager, redemptioner, or otherwise. Adams v. Rockingham Ins. Co. 29 Maine, 292; White v. Brown & als. 2 Cush. 412."

See, also, *Sisk v. Rapuano,* 94 Conn 294, 108 A 858, 11 ALR 1291; Annotations, 11 ALR 1299, 1313; *Russel v. Robertson,* 6 Upper Canada L Jour (1859-60), p. 143.

█ The personal nature of a contract of fire insurance has been recognized by this court in *Yoshida v. Security Ins. Co.,* 145 Or 325, 26 P2d 1082; *Miller v. Gold Beach Packing Co.,* 131 Or 302, 282 P 764, 66 ALR 858; *Strong v. Moore,* 118 Or 649, 245 P 505; *Morrison v. Germania Ins. Co.,* 88 Or. 410, 171 P 412. As these cases hold, a policy of fire insurance does not run with the land or pass to the purchaser by a sale of the premises or property insured. See, also, 1 Couch, op. cit., 43, § 27; 1 Joyce on Insurance 119 § 23; 45 CJS 19, Insurance § 1140; 44 CJS 934-5, Insurance § 224; 26 CJ 18, Fire Insurance § 1.

The respondent points out that, by the terms of the insurance policy, the loss is made payable to the mortgagors "and legal representatives", that under certain decisions the term "legal representatives" includes assigns (*Mutual Life Insurance Co. v. Armstrong,* 117 US 591, 6 S Ct 877, 29 L ed 997; *Gate-Way, Inc. v. Hillgren,* 82 F Supp 546), and suggests that the respondent, as the grantee of the mortgagors, is an assignee of the policy. But, as we have just shown, the conveyance of the land to the respondent did not carry with it any right in the policy. Under the suggested interpretation of the term "legal representatives", the contract means that the coverage is extended to anyone to whom the policy might be assigned, but it does not purport to make a grantee of the premises an assignee of the insurance policy. The respondent failed to secure an assignment of the policy, and therefore acquired no rights under it.

The present question lies somewhere in between that determined in *Malvaney v. Yager,* supra, on the one

hand, and that determined in the Deming Investment Co. and Cushing cases, on the other. While the policy of insurance here was not taken out and paid for by the mortgagees, as in the latter cases, neither was it taken out and paid for by the redemptioner as in the former, and the redemptioner acquired no rights in the policy by assignment. His rights, whatever they may be, are solely those which attach to his status as one entitled to redeem. The building has been fully restored and there is no claim that it is not as good a building as it was before the fire. It is in these circumstances that the redemptioner asserts that he is, none the less, entitled to the insurance money, as well as the land and the restored building.

It is obvious that if this contention is sustained the redemptioner will receive a windfall, though that consideration does not necessarily decide the question. See, however, *Ramsdell v. Insurance Co. of North America,* 197 Wis 136, 221 NW 654, and comment thereon in 88 Penn. L. Rev. 347, 354. If there were some rule of law which obligated the mortgagee under the particular circumstances of this case to hold the insurance money as a fund for the benefit of a redemptioner, should there be one, that rule would have to be followed, notwithstanding it would result in the "unjust enrichment" of a party.

The question is one of first impression, not only in Oregon, but elsewhere, so far as we have been able to determine after an exhaustive search. In New York and Michigan it has been held in cases involving policies which contained the standard mortgage clause that the repair of the premises by the owner will not prevent the mortgagee from recovering the insurance payable to him. *Savarese v. Ohio Farmers' Ins. Co., Pink v. Smith,* both supra. A similar decision is *Foster*

*v. Equitable Mutual Fire Ins. Co.,* 68 Mass 216. These were not cases involving the rights of a redemptioner, but cases in which the fire loss occurred while the mortgage was in full force and effect. In the Savarese case the decision had the aid of a statute which gave the mortgagee the option to repair or apply the insurance money on the mortgage debt, and the New York court thought that this provision warranted an implication that no such option was allowed to the mortgagor. The same result was reached by the Michigan court without the aid of a statute, and Mr. Glenn in his work on Mortgages, Vol. 1, 182 § 27.4, gives it as his opinion that the mortgagee has such an option regardless of statute. A contrary conclusion was reached in *Huey v. Ewell,* 22 Tex Civ App 638, 55 SW 606. We would suppose that, if such an option does reside in the mortgagee while the mortgage is in full force and effect and the mortgagor is in possession of the premises, it should, for a stronger reason, be available to a mortgagee who has gone into possession of the premises as a purchaser at execution sale.

These decisions bear on the present question only remotely. Basically, they involve application of the rule that fire insurance is a contract of indemnity. Will the insurance company be permitted to escape liability by pleading that the mortgagee has sustained no loss because the owner of the land has restored his security? Or, when the insurance company has paid the loss to the mortgagee and the owner has made the repairs, will the insurance money inure to the benefit of the owner for the same reason? Both these questions are answered in the negative in what we consider to be the better reasoned opinions. The contract of insurance is given effect according to its terms. If the test here should be indemnity for loss, then clearly it

cannot be said that the redemptioner has sustained an injury through the use of the insurance money to repair the building, or, on the other hand, that the mortgagees have been recompensed for a loss that they did not sustain.

■ Our conclusion is that the redemptioner in this case ''whose foresight did not impel him to obtain insurance protection'' (*Yoshida v. Security Insurance Co.*, supra, 145 Or at p. 336) is in no position to dictate to the mortgagees the decision as to whether they should hold the insurance money for his account or use it to repair the building. He will get all that the statute allows him upon payment of the full purchase price which the property brought at execution sale. While the mortgagees did not pay the premium, they did contract with the mortgagors for the issuance of the insurance policy protecting their interest, and through that means entered into a separate and independent contract of insurance with the insurance company. The redemptioner was never a party to that contract and has never had an interest in it. Had there been no insurance he would have had to be content with the land and a partially destroyed building. He will now get a building restored to its former condition with the proceeds of an insurance policy to which he is a stranger. On the other hand, if the redemptioner's contention should prevail, the mortgagees will have sustained a loss of approximately $5,000. They will not get back the full purchase price which they paid at execution sale. We can see neither reason nor justice in a rule which would produce such a result. We therefore hold that the mortgagees are under no duty to account to the redemptioner for the proceeds of the insurance policy.

We expressly refrain from intimating an opinion upon the questions whether, had the building not been

restored, the mortgagees would have been under such a duty to account, or wether, in the case of a redemptioner whose interest, as well as that of the mortgagee, is covered by the policy of insurance, the mortgagee has an option to rebuild or repair a building damaged by fire, rather than keep the insurance money available to be applied on the redemption price. These questions are not now involved, and our decision is limited to the particular facts of the case at bar.

The respondent contends that the insurance money constitutes "rents, issues and profits" to which he is entitled under ORS 23.560 (3), which gives to the redemptioner a setoff against the amount necessary to be paid to redeem, "for all rents, issues and profits accruing from the property sought to be redeemed while the same was in the possession of the purchaser". The contention is based upon a definition, sometimes found, of "rents, issues and profits" as "the land itself". See *In re France's Estate,* 75 Pa 220, 224; *Connolly v. Bouck,* 174 Fed 312, 316. These cases and others cited deal with the use of the phrase in contexts quite foreign to that of the redemption statute. As there used the words apply only to net profits and such as are of the nature of rent. *Smith v. Howell,* 91 Or 279, 297, 176 P 805. They do not include the proceeds of a policy of fire insurance.

Two other questions growing out of the accounting are raised by the appellants' assignments of error. Certain sums were claimed by them as necessarily expended to prevent waste. ORS 23.560 (2) requires the redemptioner to reimburse the purchaser for such expenditures. The total amount involved is only $158.75, and the court allowed three of the items totaling $20.25. We have examined the testimony and are not persuaded

that the other expenditures may fairly be said to have been necessary in order to prevent waste.

The appellants also challenge the finding of the Circuit Court that the respondents received as rent under the lease of the premises a total of $475. The only evidence on the subject is that the tenant paid $215 at the time of the execution of the lease and $65 for the month commencing March 15. The lease called for a total rental of $1800 for a term of 25½ months (the receipt of $215 being acknowledged by the lessor at the time of the execution of the lease); $65 a month for a period of 11 months beginning with February 15, 1953; $85 a month for the following 10 months; and $10 a month for the last 2 months of the term. The appellants contend that they are not liable for the initial payment because it was made as a deposit. It was, nevertheless, rent, and the purchasers must account for it. If for any reason the tenant should become entitled to recover it back that will be a matter between the respondent and the tenant. The additional amount of rent over and above that actually received seems to have been allowed on the theory that it had come due under the terms of the lease. The purchaser, however, is only required to account for rents actually received. *Reichert v. Sooy-Smith*, 85 Or 251, 260, 165 P 1174, 1184. Cf. *Lytle v. Payette-Oregon Irr. Dist.*, 175 Or 276, 287, 152 P2d 934, 156 ALR 894. It was error, therefore, to require the appellants to account for any rents in excess of those shown by the testimony to have been actually received.

In *Wilson v. Crimmins*, 172 Or 616, 143 P2d 665, and *Alpha Corporation v. McCredie*, 157 Or 88, 94-95, 70 P2d 46, we held that when an accounting becomes necessary under the statute the time for redemption is extended until the matter is finally disposed of

upon appeal. In those cases we fixed the final date for redemption. In the present case, in view of the lease of the premises, which presumably is still in effect, a further hearing must be had in the Circuit Court for the purpose of determining what, if any, additional rents have been received by the appellants since the previous hearing. The decree of the Circuit Court will, therefore, be modified in the particulars hereinabove indicated, and the cause will be remanded to that court for such hearing, and the entry of new findings in accordance with this opinion and with the evidence respecting additional rentals, if any, received by appellants. The last day for redemption is fixed at September 1, 1955, and such redemption will be permitted upon the giving of two days notice to the appellants, and, upon the payment to them of the full purchase price of the property and the amount found by the Circuit Court to have been expended by the appellants for the prevention of waste, all with interest at 6% per annum, as provided by the statute, less the amount of rents accruing from the property as finally established by the evidence, but without any deduction on account of the proceeds of the fire insurance policy received by the appellants. If for any reason the additional hearing and the entry of a proper decree cannot be completed within the time specified the Circuit Court should order an additional extension of time for redemption.

Finally, the appellants contend that the respondent is not entitled to redeem because he has not paid any money to the sheriff or into the court. The point is ruled against them in *Wilson v. Crimmins,* supra at p. 621.

The order of the Circuit Court is modified and the cause remanded for further proceedings.

*Norman N. Griffith,* Portland, for the motion.

*Lee A. Ellmaker,* Portland, and *Phelps, Burdick & Walker,* Portland, contra.

Before WARNER, Chief Justice, and LUSK, BRAND and PERRY, Justices.

LUSK, J.

The respondent, Forrest F. Greene, has filed a petition for rehearing and supporting brief, which is a reargument of every question previously argued and considered and passed on by this court.

In the brief attention is called to two inaccuracies of which we were guilty in stating the facts. They are contained in this sentence: "Under this arrangement [i.e., the escrow] George A. Rahoutis, as agent for the Haskins, transmitted to Title and Trust Company $6500, the amount of his principals' loan to the purchasers of the property, with instructions, among others, to pay therefrom the premium on a fire insurance policy to be issued upon the building." The amount transmitted by Rahoutis was not $6500 but $6175. That discrepancy, however, is immaterial. The portion of the quoted sentence which reads "with instructions * * * to pay therefrom the premium on a fire insurance policy to be issued upon the building" was our interpretation of the actual language used by Rahoutis in his letter of instructions. What he said was this:

"On the adjustments, you are to collect Four Hundred Seventy-seven and 42/100 ($477.42) Dollars for Six Thousand Five Hundred and 00/100

($6,500.00 Dollars) insurance premium for three years to the above mentioned personal and real property."

We may have indulged in an unwarranted paraphrase of the language of the Rahoutis letter. We have, therefore, considered again the respondent's contention that it was he who paid the premium on the insurance. We have again examined the closing statement of the escrow agent, Title and Trust Company, and all of the escrow documents which appear in the record, and we adhere to our finding that the evidence does not support this contention. We cannot find any such evidence in the papers referred to, and there is one consideration to which we did not heretofore refer which should be conclusive of the matter. Mr. Greene was a witness in the case, and he did not testify that he paid or was under any duty to pay the insurance premium. Indeed, he was never asked the question. Surely, if it was his money that was used for that purpose he would have known about it and would have testified to it. Counsel for the respondent says in his brief, "This was an unorthodox deal." We agree. It appears that there were some judgments against the respondent and a portion of the money loaned by the appellants Haskin to the mortgagors was used to pay off these judgments, and when the whole transaction was concluded the respondent emerged with a mortgage on the property for $16,650.12. It was a second mortgage, subordinate to the first mortgage for $6500 given to the Haskins. Under a most liberal appraisal the property was not worth in excess of $15,000. The insurance policy was in the amount of $6500, sufficient only to cover the first mortgagees' interest, and the premium was $477.10. So far as the record shows, no one other than the mortgagors was under an obli-

gation to pay the premium. In these circumstances, there should be something more than the argument of counsel based upon, at the best, dubious interpretations of instructions to the escrow agent and of figures in the closing statement of the escrow agent, before a court would be justified in finding that the respondent paid an insurance premium which, it is not shown, he ever agreed to pay or had any reason for paying.

The brief again argues, and at length, that the respondent became entitled to the benefits of the insurance policy as the grantee of the mortgagors. Certain provisions of the standard mortgage clause are relied on, but we find nothing there which even remotely tends to support the contention. All the provisions of the standard mortgage clause bear upon the rights and duties of the mortgagee. The very first clause, which we quoted in our former opinion, is stated to be for the protection of "the interest *of the mortgagee only*" in case of a change in the title or ownership of the property. We think it unnecessary to set out the provisions which are relied on by respondent's counsel and that it is sufficient to call attention to the following language appearing on the face of the policy: "Assignment of this policy shall not be valid except with the written consent of this company." There is no claim that any such consent was ever obtained.

The final contention is that "The Court erred in deciding that there was neither reason nor justice in a rule which would require the appellants to account for the insurance proceeds." As this proposition and the argument in support of it present nothing new, we are content to let what we have already written stand as adequate reasons for the view which we have taken of the question.

The petition for rehearing is denied.