<hr/>

Decided at PENDLETON, July 18, 1896.

## DOERHOEFER *v.* FARRELL.
[45 Pac. 797.]

MORTGAGE SALE—REDEMPTION—RIGHTS OF PURCHASER.— After a mortgage sale was set aside, without disturbing the possession of the purchaser, he procured an order allowing him to remove a building on the premises to a place where it would be safe from destruction, and directing that the cost thereof should be a charge upon the mortgaged property. On a second sale thereof, the premises were sold to said purchaser for the amount of his original bid. After the first sale, but before the making of said order, a judgment was obtained against the mortgagor by another creditor. *Held,* that under Hill's Code, § 301, providing that a lien creditor may redeem if the

purchaser be also a creditor having a lien prior to that of the redemptioner, by paying the amount of such lien with interest, the purchaser could not require the redemptioner to pay the expense of moving the building in addition to the amount of the bid at the second sale with interest, for no court can change or affect the statutory rights of a redemptioner.

From Union: ROBERT EAKIN, Judge.

Action by A. L. Schmidt, trustee, against the Oregon Gold Mining Company, to foreclose a mortgage. Petition by John Doerhoefer to have a redemption by J. H. Farrell set aside. A demurrer to said petition was sustained, and Doerhoefer appeals.

AFFIRMED.

For appellant there were briefs and arguments by *Messrs. John L. Rand* and *J. D. Slater.*

For respondent there was a brief and an oral argument by *Mr. Thomas Crawford.*

Opinion by MR. CHIEF JUSTICE BEAN.

This is an appeal from an order sustaining a demurrer to a petition asking the court below to set aside the redemption by respondent of certain property purchased by the appellant at a foreclosure sale. The facts are that on October twenty-first, eighteen hundred and ninety-four, a decree was regularly given and entered by the Circuit Court of Union County foreclosing a mortgage made by the Oregon Gold Mining Company to one A. L. Schmidt, trustee, and ordering a sale of the mortgaged premises to satisfy the amount secured thereby. Thereafter, and on the nineteenth

of February, eighteen hundred and ninety-five, the
property was sold under the decree for the sum
of nine thousand dollars, to Doerhoefer, who there-
upon took immediate possession, but on the twenty-
sixth of March, eighteen hundred and ninety-
five, on motion of the plaintiff, the court set the
sale aside without disturbing Doerhoefer's posses-
sion.  On October seventh, eighteen hundred and
ninety-five, and pending a resale, the court, upon
the *ex parte* application of Doerhoefer, and without
notice to any of the parties to the suit, made an
order allowing him to remove a quartzmill then
on the property to a place where it would be safe
from destruction by threatened snowslides, and
directed that the cost thereof, as audited by the
clerk of the court, should be a charge upon the
mortgaged property in favor of Doerhoefer.  In pur-
suance of this order the mill and machinery were
taken down and removed by Doerhoefer at a cost,
as audited and allowed, of three thousand one hun-
dred and ninety-four dollars and seventy-six cents.
At a resale of the property on November nine-
teenth, eighteen hundred and ninety-five, under
the original decree, Doerhoefer again became the
purchaser for the amount of his first bid, and
received another certificate of sale.  The court duly
confirmed the latter sale, and further decreed that
Doerhoefer have a lien against all the mortgaged
property "for the sum of three thousand one hun-
dred and ninety-four dollars and seventy-six cents,
in addition to the amount of the purchase price
by him paid therefor in case of the redemption of

said property." In the mean time, however, and prior to the *ex parte* order allowing Doerhoefer to take down and remove the mill and machinery, the respondent Farrell recovered a judgment against the Oregon Gold Mining Company for six thousand dollars, and caused the same to be regularly docketed in the judgment lien docket. On January thirtieth, eighteen hundred and ninety-six, upon application to the sheriff of Union County, Farrell was allowed to redeem the property from the sale made to Doerhoefer, by paying the sum of nine thousand eight hundred and fifty-two dollars and fifty cents, being the amount of his bid with legal interest thereon from the date of the first sale. Pending the application, Doerhoefer appeared before the sheriff and objected to the redemption, unless Farrell would pay, in addition to the purchase price, and interest, the sum of three thousand one hundred and ninety-four dollars and seventy-six cents allowed by the court as expenses for taking down and removing the mill and machinery, which objection was overruled by the sheriff, and a certificate of redemption was thereupon duly issued to Farrell. Thereafter Doerhoefer filed this petition in the court, asking to have the redemption by Farrell set aside, and the certificate issued to him canceled. To this petition a demurrer was sustained, and Doerhoefer appeals.

Without stopping to consider the important questions of practice argued by counsel, and conceding for the purposes of this case that this proceeding is regular, we are clearly of the opinion that Farrell

was entitled to redeem from the sale made to Doer-
hoefer without paying the amount of the expenses
incurred by Doerhoefer in taking down and re-
moving the mill. The statute provides that a lien
creditor may redeem within sixty days after the
date of the order confirming the sale, by paying
the amount of the purchase price, with interest at
the rate of ten per cent. per annum thereon from
the time of the sale, together with the amount of
any taxes which the purchaser may have paid
thereon, and, if the purchaser be also a creditor
having a lien prior to that of the redemptioner,
the amount of such lien with interest: Hill's Code,
§ 301. Under this section, Farrell clearly had a
right to redeem by paying the purchase money
and interest, unless, by the order of the court mak-
ing the expenses incurred by Doerhoefer in taking
down and removing the mill and machinery a
charge upon the property, he became a creditor
having a lien prior to that of Farrell. But we
know of no rule of law under which such a prac-
tice can be maintained. The most that can be
claimed for the order of the court, if valid at all,
is that such expenses became a legitimate part of
the disbursements in the suit to be paid out of
the proceeds of the property; but the court was
powerless after the sale to require the redemptioner
to pay them in addition to the purchase price and
interest. The right to redeem from an execution
sale is a statutory right, and the court can neither
increase nor lessen the burden of the redemp-
tioner. If Doerhoefer desired to prevent a redemp-

tion without the payment of the amount expended by him under the order of the court, he should have included such amount in his bid at the second sale; and, having neglected to do so, the court could not thereafter aid him by a subsequent order prescribing terms upon which the redemption should be made, different from and conflicting with the provisions of the statute. It follows that the decree of the court below must be affirmed, and it is so ordered.                    AFFIRMED.