Argued and submitted May 3, circuit court order reversed, the decision of the Court of Appeals affirmed and remanded to the circuit court December 28, 1989

## STATE OF OREGON,
Acting by and through
the Director of Veterans Affairs,
*Plaintiff (below),*

*v.*

## PETERSEN,
*Petitioner on Review,*

*and*

## PETERSEN et al,
*Defendants (below),*

*and*

## NEWMAN,
*Respondent on Review.*

(TC 82 1634 C; CA A43977; SC S35864)

784 P2d 1076

Magar E. Magar, Portland, argued the cause and filed the petition for petitioner on review.

Brian W. O'Brien, Portland, argued the cause and filed a response to the petition for review for respondent on review.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem, filed a brief on behalf of *amicus curiae* State of Oregon.

Mildred J. Carmack, John R. Faust, Jr., and Schwabe, Williamson & Wyatt, Portland, filed a brief on behalf of *amici curiae* Oregon League of Financial Institutions, Oregon Bankers Associated and Oregon Mortgage Bankers Association.

FADELEY, J.

## FADELEY, J.

At issue is the attempted redemption of a residence from a sheriff's sale following foreclosure and judgment for the balance due on a mortgage between Petersen and Oregon's Department of Veterans' Affairs.

The case comes to us as a dispute between Newman, the purchaser at the sheriff's sale, and Rita Petersen, the homeowner who gave a mortgage in 1968 to the Oregon Department of Veterans' Affairs (DVA) and who seeks to redeem from the sale. In 1986, from the proceeds of that sale, DVA was paid the $17,465.98 due to it in full. A subconstitutional ground for decision, which this court normally would employ before reaching constitutional questions, is apparent in the record.[1]

When Petersen tendered $22,000 to redeem from Newman less than one year after the sheriff's sale, there were conditions attached to her tender. Those conditions were not permitted or authorized by the statute setting forth and describing her right of redemption. Before making the tender, Petersen obtained an *ex parte* order of the circuit court directing Newman to show cause why the court should not order the sheriff to issue Petersen a certificate of redemption under conditions requested by Petersen which would prevent the sheriff from paying the redemption money to Newman. These conditions, not authorized by the statute, would prevent Newman from receiving the redemption money from the sheriff by ordering the sheriff to not pay the money to Newman. One day

---

[1] This court has repeatedly enunciated the rule that a statutory ground for deciding a case will be used, where it is available, rather than deciding on a constitutional basis. Otherwise the "cart is put before the horse." It is basic that determination of Oregon statutory law is antecedent to any claim under the federal constitution * * *." *State v. Spada,* 286 Or 305, 309, 594 P2d 815 (1979). State constitutional issues are also deferred where a resolution based on a statute is available. "To the extent that statutory law disposes of a case a court has no occasion to reach a constitutional issue." *See e.g., Nelson v. Lane County,* 304 Or 97, 102 n 2, 743 P2d 692 (1987); *State ex rel Hathaway v. Hart,* 300 Or 231, 235, 708 P2d 1137 (1985); *Burt v. Blumenauer,* 299 Or 55, 70, 699 P2d 168 (1985); *Planned Parenthood Assn. v. Dept. of Human Resources,* 297 Or 562, 564, 687 P2d 785 (1984); *State v. Thompson,* 294 Or 528, 531, 659 P2d 383 (1983).

The Court of Appeals did not discuss or reach Newman's third claim of error based on the redemption statutes although it was aware of that subconstitutional claim. *Director of Veterans' Affairs v. Petersen,* 94 Or App 314, 320 n 8, 766 P2d 386 (1988).

later, in Newman's absence, the circuit court entered its order directing that a certificate of redemption be issued to Petersen but that the money not be given to Newman. It is that order from which Newman appealed and that order which the Court of Appeals reversed. The decision of the Court of Appeals is affirmed, but on the grounds stated herein rather than on the constitutional grounds expressed by the Court of Appeals.

The order, dated March 25, 1987, provided:

"1. The Sheriff of Washington County, on the tender of $22,000, no later than the close of business 3/25/87, shall issue Rita Helen Petersen a certificate of redemption.

"2. The Sheriff of Washington County shall then tender the funds received by him to Robert Myers at P.O. Box 19388, Portland, OR 97219, Rita Helen Petersen's Chapter 13 Trustee in bankruptcy for the resolution of all claims between Redemptioner and Creditor-Purchaser at execution sale."[2]

Newman assigned as error in the Court of Appeals that the order directed the sheriff to pay the funds to a third person "when the statute requires that funds paid to the sheriff on redemption be paid to the purchaser." He cited ORS 23.570(4) to support the claim of error.

The redemption statutes require:

"Redemption shall be made by paying the amount of the purchase money, with interest thereon at the rate of nine percent per annum from the date of sale, together with the amount of any taxes the purchaser may have been required to pay thereon, * * *." ORS 23.560(2).

The statute requires "paying the amount" due, not paying it on the condition that the sheriff transfer the funds paid to someone other than the sheriff's sale purchaser.

The redemption statutes also require that "the sheriff shall immediately pay the money over to the person from

---

[2] The record does not show any service on Newman of the show cause order or of the motion applying for it, both of which were made one day before the order appealed from was entered. Likewise, the record does not show when the bankruptcy proceeding was commenced in relation to the date of Newman's purchase at the sheriff's sale. That proceeding may have been started after the sale. The record, briefs, and argument make no reference to any order in bankruptcy staying or voiding the sheriff's sale.

whom the property is redeemed * * * when demanded." ORS 23.570(4).

The order did not comply with either command of the statute. This court has held that the court has no power to alter the statutory redemption requirements. In *Stamate v. Peterson,* 250 Or 532, 533-34, 444 P2d 30 (1968), the court stated:

> "Redemption, therefore, must be pursued in accordance with the applicable statutes, and not otherwise. *See Herrmann v. Churchill,* 235 Or 327, 332-333, 385 P2d 190 (1963); *Haskin et al v. Greene,* 205 Or 140, 151, 286 P2d 128, 286 P2d 137 (1955); *Hansen v. Day,* 99 Or 387, 390, 195 P 344 (1921); *Dray v. Dray,* 21 Or 59, 67, 27 P 223 (1891). The statutory nature of the right of redemption gives rise also to the rule that it is not within the province of the court either to increase or lessen the burden imposed upon a party seeking to exercise redemption. *Doerhoefer v. Farrell,* 29 Or 304, 308, 45 P 797 (1896); followed in *Hansen v. Day, supra,* and *Reichert v. Sooy-Smith,* 85 Or 251, 257, 165 P 1174, 165 P 1184 (1917)."

In *Doerhoefer,* the sheriff's sale purchaser expended sums to remove an old mill from the premises and the court ordered the redemptioner to pay these sums as part of the redemption. This court held that:

> "[T]he court was powerless after the sale to require the redemptioner to pay them in addition to the purchase price and interest. The right to redeem from an execution sale is a statutory right, and the court can neither increase nor lessen the burden of the redemptioner. * * * the court could not thereafter aid him [the sale purchaser] by a subsequent order prescribing terms upon which the redemption should be made, different from and conflicting with the provisions of the statute." 29 Or at 308-09.

The rationale in *Doerhoefer* applies equally here. Payment to someone other than the purchaser conflicts with the statute and disadvantages the purchaser at sale just as the redemptioner in *Doerhoefer* was disadvantaged by the circuit court's deviation from the statute there.

In *Hansen v. Day,* 99 Or 387, 195 P 344 (1921), the redemptioner sought to have a separately-arising "counterclaim" against the sale purchaser offset against that purchaser to reduce the amount needed to redeem. This court

refused to permit the offset, stating that redemption "is statutory * * * it must be pursued strictly." 99 Or at 390. *See also First Federal v. Gruber,* 290 Or 53, 57, 618 P2d 1265 (1980), stating: "[R]edemption must be pursued only in accordance with the applicable statutes."

The foregoing is sufficient to form the basis for decision of this case. A debtor who seeks to redeem must follow the statutory terms by "paying the amount of the purchase money" and must do so unconditionally.[3] The sheriff must "immediately pay over" that amount to the purchaser. In this case Rita Petersen, and the order of the circuit court, added conditions conflicting with the statute. Neither had authority to do so. The order of the circuit court is reversed. The decision of the Court of Appeals is affirmed, but on the grounds stated herein rather than the constitutional grounds expressed by the Court of Appeals, and the case is remanded to the circuit court.

**LINDE, J.,** specially concurring.

Of course the majority is right that when narrow, subconstitutional grounds suffice for a decision, a court should not needlessly pass on a constitutional dispute. But there is an equal risk of misconstruing an important area of statutory law under a mistaken impression that a case poses serious constitutional doubts. I do not share the majority's conviction that its holding correctly disposes of the statutory issues in this case.

The circuit court's order, quoted by the majority at 308 Or 636 comprised two separate parts. The first paragraph ordered the sheriff to issue Petersen a certificate of redemption. The second paragraph instructed the sheriff to tender the redemption funds to Petersen's trustee in bankruptcy. The majority holds that the order to pay the trustee in bankruptcy contravened ORS 23.570(4), which requires the sheriff to pay the money to the person from whom the property is redeemed. That may well be so, but it does not necessarily

---

[3] This appeal raises no accounting or set-off issue under ORS 23.560(3) and (4). The statutes have specific separate provisions for invoking such issues and for dealing with them once invoked. The facts in this case do not supply the statutorily required predicate to even discuss such issues. Accordingly, cases such as *Kirk et al v. Rose v. Woods et ux,* 218 Or 593, 346 P2d 90 (1959) and *Haskin et al v. Greene,* 205 Or 140, 286 P2d 128 (1955), simply are not apposite.

mean that the putative redemptioner who has paid the money into court has lost the opportunity to recover her property.

To derive that result from the bare words of ORS 23.560(2) that "redemption shall be made by paying the amount," as the majority does, is much more tenuous. The majority quotes a number of this court's past opinions for the general proposition that redemption must follow statutory procedures, but the holdings in the cited cases do not compel or even support today's holding. Both in *Doerhofer v. Farrell,* 29 Or 304, 45 P 797 (1896), and *Hansen v. Day,* 99 Or 387, 195 P 344 (1921), the dispute concerned the amount of the payment offered to redeem the property; the court held, in *Doerhoefer,* that the redemptioner did not have to repay the purchaser at the sheriff's sale for certain expenses and, in *Hansen,* that a mortgagor's counterclaim against the foreclosing mortgagee would not be offset against the sum payable to the sheriff on redemption. Other statements about strict compliance with the redemption statutes refer to compliance with notice requirements. *First Federal v. Graber,* 290 Or 53, 618 P2d 1265 (1980); *Stamate v. Peterson,* 250 Or 532, 444 P2d 30 (1968). None of these cases decide that when the proper amount is paid into court with the redemptioner's request to pay the funds to what proves to be the wrong person, the result is not only to decline the request but to void the attempted redemption altogether without an opportunity to redirect the funds correctly. The point was not considered in the circuit court nor decided in the Court of Appeals. But when there is a bona fide disagreement who should receive redemption funds that have been paid into court, it is at least arguable that the court may decide the disposition of the funds without destroying the attempted redemption, particularly when the time for redemption meanwhile has expired.[1]

In short, I have doubts about the majority's basis for

---

[1] Not every statutory requirement must be fulfilled within the redemption period. For example, the statute also requires that a person redeem "by paying to the sheriff the sum required." ORS 23.570(1); *see also* ORS 23.560(2) and ORS 23.570(4). However, this court has held that tendering money to the sheriff is not a "condition precedent" to redemption if the redemption price is in dispute. *Kirk et al v. Rose v. Woods et ux,* 218 Or 593, 598, 346 P2d 90 (1959), *overruled on other grounds, First Federal v. Graber,* 290 Or 53, 618 P2d 1265 (1980). When an accounting is necessary, "the time for redemption is extended until the matter is finally disposed of upon appeal." *Haskin et al v. Greene,* 205 Or 140, 158, 286 P2d 128 (1955).

this decision. The Court of Appeals did not address the problem, because the court held that in any event the attempted redemption was too late under ORS 23.560(1). If that holding was correct, Petersen would lose regardless of who was designated to receive the funds Petersen paid to redeem her property. I believe that the holding was correct and dispositive.

Although at the time that the mortgage was given, ORS 23.560(1) provided a one-year redemption period, the section was amended in 1985 to reduce the period to 180 days. Petersen challenged the constitutionality of applying this shortened redemption period to preexisting mortgages as an impairment of the obligation of contracts. *See* United States Constitution, Article I, section 10; Oregon Constitution, Article I, section 21.

The Court of Appeals sustained the shortened redemption period under the United States Supreme Court's "police power" doctrine stated in *Homebuilding & Loan Ass'n v. Blaisdell,* 290 US 398, 54 S Ct 231, 78 L Ed 413 (1934), recognizing that *Blaisdell* had superseded *Barnitz v. Beverly,* 163 US 118, 16 S Ct 1042, 41 L Ed 93 (1896), and this court's decisions following *Barnitz, State ex rel. v. Sears,* 29 Or 580, 46 P 785 (1896), and *State v. Hurlburt,* 93 Or 34, 182 P 169 (1919). The Court of Appeals reached the right result although, with respect to the state constitutional claim raised in the petition for review, for the wrong reason.

The law shortening the redemption period did not impair any obligation of the mortgage contract and would pass muster under Article I, section 21, regardless of any justification in social policy. *State ex rel. v. Sears, supra,* and *State v. Hurlburt, supra,* are not in point. Those cases, like *Barnitz,* dealt with statutes authorizing or extending redemption rights, not reducing them. Similarly, *Blaisdell* involved a mortgage moratorium law, extending the time during which a mortgage debtor might postpone performance of his contractual obligation.

This propensity of state legislatures to aid debtors against their creditors led to the federal ban against impairing such obligations by the states in Article I, section 10. In the absence of a corresponding restraint on Congress in Article I, section 9, to protect those rights against federal laws, the

federal contract clause could be understood to address a problem of federalism by withdrawing one kind of disruptive economic power from state legislatures as much as to enshrine contractual rights. *Cf. Pension Benefit Guaranty Corp. v. Gray & Co.,* 467 US 717, 104 S Ct 2709, 81 L Ed 2d 601 (1984). Copied into a state constitution, the clause can only serve directly to protect contractual rights. Neither clause is confined to the obligation of debtors, *see Eckles v. State of Oregon,* 306 Or 380, 390, 760 P2d 846 (1988) (citing sources), *appeal dismissed,* ___ US ___, 109 S Ct 1928, 104 L Ed 2d 400 (1989), but it was debtor relief legislation that the *Blaisdell* Court nevertheless undertook to sustain in the name of the state's "police power."[2]

The debtor's contractual obligation is to pay the debt. Foreclosure of a mortgage given to secure the debt is part of the creditor's remedy, which the law subjects to an opportunity for the debtor to redeem the property. Redemption after foreclosure is statutory, not equitable. *Stamate v. Peterson, supra; Hansen v. Day, supra.* The debtor's statutory opportunity to redeem is not an obligation of the creditor derived from the parties' agreement.[3] Of course it is jurisprudentially possible to incorporate into "contract" all legal rules and remedies concerning each party, consensual and nonconsensual (such as the rules governing foreclosure and redemption), those existing at the time of contracting or potential later enactments. But not every element of a contract is some party's obligation. The contract clause was a response to political practice, not jurisprudential theory. To call a law effectively limiting the performing lender's remedies against a

---

[2] *Eckles v. State of Oregon,* 306 Or 380, 399, 760 P2d 846 (1988), stated:

"[T]his court has emphasized in recent years that the 'police power' is indistinguishable from the state's inherent power to enact laws and regulations; the existence of that power cannot explain the extent to which it is constitutionally limited * * *. Moreover, the state cannot avoid a constitutional command by 'balancing' it against another of the state's interests or obligations, such as protection of the 'vital interests' of the people. * * * Limits on the contractual obligations of the state must be found within the language of history of Article I, section 21, itself."

[3] About a similar attempt to apply the contract clause against a statutory change in tort law, we wrote:

"[I]t is farfetched to read into the transaction between defendant and Miss Swan a contractual obligation on her part not to hold defendant responsible for negligence without affording it the then existing tort defenses."

*Hall v. Northwest Outward Bound School,* 280 Or 655, 661, 572 P2d 1007 (1977).

nonperforming debtor a contractual "obligation" of the performing party inverts the language of the constitutional drafters.

*Eckles* observed that Oregon's contract clause, unlike other guarantees in Article I which originated in state constitutions, likely meant "to incorporate the substance of the federal provision, as it was then interpreted by the Supreme Court of the United States." 306 Or at 390. But the Supreme Court's position on using the contract clause against statutes adding to contract obligations was unclear and inconsistent in Oregon's early years. *See* Hale, *The Supreme Court and the Contract Clause,* 44 Harv L Rev 512 (1944). Such a use of the clause was rejected in *Satterlee v. Matthewson,* 27 US (2 Pet) 380, 7 L Ed 458 (1829), and decisions viewing the clause as a limit on added "burdens" date from a later era when the Court used the clause, along with "substantive due process," to protect private economic investments and settled expectations. One sequence of cases found a utility company's contractual franchise impaired when local lawmakers "added to its burdens" by extending the company's service obligations and low rates. *See Georgia Ry. & Power Co. v. Decatur,* 262 US 432, 439, 43 S Ct 613, 67 L Ed 1065 (1923) (citing cases); *cf. Schramm v. Done,* 135 Or 16, 293 P2d 931 (1931) (law making bank shareholders liable to depositors interpreted to be only prospective in order to avoid conflict with federal contract clause). There is no reason to think that Oregon's 1857 constitutional convention endorsed such future ventures into invalidating laws because they imposed duties in addition to those undertaken by contract.

The statutory right to redeem foreclosed property of course is valuable, but the constitutional clause protects rights to contractual performance, not all valuable rights. Although some may deem shortening a debtor's time for redeeming foreclosed property a retreat from a socially desirable policy, it does not impair a contractual obligation of the creditor under Article I, section 21. There is no need under the Oregon Constitution to speculate whether the 1985 change in the redemption period of ORS 23.560(1) met the policy justifications recited in *Blaisdell* for the opposite policy.

As for the claim under Article I, section 10, of the United States Constitution, the Court of Appeals may have

oversimplified the answer when it stated only that "our analysis should not depend on whether the party who suffers the detriment from a change in the redemption period is the mortgagor or the mortgagee, if the change is reasonably drawn to accomplish a legitimate end." 94 Or App at 319. *Blaisdell* took pains to justify Minnesota's restrictions on mortgage foreclosures during a great farm depression by much more serious concerns than whatever qualifies as a "legitimate end."

The answer under Article I, section 10, also may be complicated by a distinction between private and governmental contracts, *see United States Trust Co. v. New Jersey,* 431 US 1, 97 S Ct 1505, 52 L Ed 2d 92 (1977), because in this case the state was the mortgagor, assuming again that shortening the redemption period "impaired an obligation" of the loan and mortgage. And the Supreme Court's readiness to give that concept a broader reading than Oregon's Article I, section 21, is suggested by the Court's invalidation of another Minnesota law which added to rather than reduced the obligations of a contract. *Allied Structural Steel v. Spannaus,* 438 US 234, 98 S Ct 2716, 57 L Ed 2d 727, *reh den* 439 US 886 (1978). There the statute retroactively imposed novel pension obligations on an employer beyond those the employer had assumed under a voluntary pension plan, a step that the Court described as nullifying "express terms of the company's contractual obligations." 438 US at 247. "Nullifying" express contractual obligations by adding a further statutory obligation is not exactly synonymous with "impairing" those obligations that a party has undertaken in the contract; but in any event, the law before us is far from the law in *Allied Structural Steel.* The redemption law deals with purely statutory rights in an area long subject to state legislation, it is not limited to a narrow class of parties or contracts, and it does not alter express contractual terms negotiated between the parties.

For these reasons I concur in affirming the decision of the Court of Appeals.